## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

WENDELL GORUM, Ph.D.,                )
                                     )
         Plaintiff,                  )
                                     )         Civil Action No. 06-565-GMS
    v.                               )
                                     )
ALLEN L. SESSOMS, Ph.D.,             )
                                     )
         and                         )
                                     )
BOARD OF TRUSTEES OF                 )
DELAWARE STATE UNIVERSITY,           )
                                     )
         Defendants.                 )

### DEFENDANTS' MOTION IN LIMINE TO
### EXCLUDE EVIDENCE BASED ON CHANGED OR ABANDONED THEORIES

Defendants, Allen L. Sessoms, Ph. D. ("President Sessoms") and the Board of Trustees of

Delaware State University ("DSU"), move this Court, for an order *in limine* barring Plaintiff

Wendell Gorum, Ph. D. ("Dr. Gorum") from offering into evidence testimony relating to

changed or abandoned theories.  In support of this Motion, Defendants state as follows:

1.    Because Dr. Gorum has changed and abandoned some of his initial claims, he

should be precluded, under Federal Rules of Evidence 401, 402 and 403, from introducing

evidence relating to those claims.  Federal Rule of Evidence 401 defines relevant evidence as

"evidence having any tendency to make the existence of any fact that is of consequence to the

determination of the action more probable or less probable than it would be without the

evidence," and under Rule 402 "[e]vidence which is not relevant is not admissible."  It is well

settled that "[a] district court has 'broad discretion to determine matters of relevance.'"

Greenfield v. Sears, Roebuck and Co., C.A. No. 04-71086, 2006 WL 2927546 at *4 (E.D. Mich.

Oct. 12, 2006) (attached as Ex. A) (citing <u>Williams v. Nashville Network</u>, 132 F.3d 1123 (6th Cir. 1997)).

      2.      It is axiomatic that once a party changes or abandons its claims, evidence relating to those claims no longer falls within the rubric of being relevant since any such evidence would fail to make "the existence of any fact that is of consequence . . . more probable or less probable . . . ." Fed. R. Evid. 401. In <u>Greenfield,</u> the plaintiff sued his former employer alleging age discrimination for failure to promote him on five separate occasions. <u>Id.</u> at *1. In response to the employer's motion for summary judgment, plaintiff abandoned four of his failure to promote claims. The court subsequently granted the employer's motion *in limine* to preclude plaintiff from relying upon evidence relating to the four abandoned claims, finding such evidence was not relevant to the remaining claim. <u>Id.</u> at 5.

      3.      Dr. Gorum is also precluded from introducing evidence relating to any new theories that were not included in his Amended Complaint. Federal Rule of Civil Procedure 15 permits amendments to the pleadings only by motion. Dr. Gorum has failed to even attempt to amend his pleadings to include any new theories or claims. Any evidence relating to these claims is irrelevant under Fed. R. Evid. 402 and should, therefore, be excluded. <u>See, e.g., Mason v. So. Ill. Univ.</u>, 233 F.3d 1036, 1043-44 (7th Cir. 2000) (evidence of co-worker harassment offered at trial excluded where plaintiff did not give defendant fair notice of claim in complaint or identify in discovery). The following paragraphs detail the changed or abandoned theories.

**I.      Dr. Gorum Should Be Precluded from Producing Evidence on or Making Argument Concerning Alleged "Protected Activity" Other Than his Assistance to DaShaun Morris, Since Those Claims Are Outside of the Scope of the Amended Complaint, <u>and one New theory Has Been Abandoned.</u>**

      4.      Dr. Gorum instituted this action under 28 U.S.C. §1983 alleging that Defendants retaliated against him for *speech* that was protected under the First Amendment. Dr. Gorum based

his claims for relief on one protected activity, i.e., his alleged support of DaShaun Morris. See 1st Am. Complaint (D.I. 14) at ¶ 1, 13-23. In his deposition Dr. Gorum expanded his claims to include three other alleged protected activities – namely, his reputation on campus, his support for re-opening the Presidential search, and his involvement with the DSU Fraternity Alumni Breakfast invitation. See Defendants' Opening Memorandum in Support of Defendants' Motion for Summary Judgment (D.I. 39) at 10-13 ("Defs. Memo.") and Reply Memorandum (D.I. 44). As more fully detailed in Defs. Memo. and Reply Memorandum, Dr. Gorum should be precluded from introducing any evidence or making any arguments in support of these three new theories, which are outside the scope of the Amended Complaint.

5.    One of the four reasons why he believed that President Sessoms was motivated to retaliate against him was because of his alleged reputation as a leader among the faculty, a "power broker" or a "rabble rouser." Plaintiff abandoned this theory in response to Defendant's Motion for Summary Judgment. While Plaintiff does make a brief reference to his reputation to explain why DaShaun Morris and other students sought his assistance, he omitted this as a separate "protected activity." See Plaintiff's Opposition to Defendants' Motion for Summary Judgment (D.I. 43) ("Pltf's Opp.") at 3-6 (Statement of Facts does not include the "reputation" theory); 24-27 (Argument on speech of public concern does not list "reputation" theory); 28-31 (Argument on President Sessoms' alleged knowledge of protected activity does not expressly mention this theory); 31-32 (same for retaliatory motive).

## II.    Dr. Gorum Should Be Precluded from Producing Evidence on or Making Any Argument Concerning the Theory That his Assistance to DaShaun Morris was Protected "Association" or Petition Rather Than "Speech," Because These Theories Are Outside of the Scope of the Amended Complaint

6.    Despite having failed to allege in the Complaint that his assistance to DaShaun Morris constituted anything other than protected speech, in his Opposition to Defendants' Motion for

Summary Judgment, Dr. Gorum contended, for the first time, that the assistance he provided to

Mr. Morris also qualifies for protection under the "freedom of association" or as petition for redress

of grievances. Pltfs' Memo at 25. In addition to all the reasons why such claims fail on the merits

as set forth in Defendants' briefs in support of its summary judgment motion, such claims should be

excluded simply because neither of these novel theories were identified in Dr. Gorum's Amended

Complaint, and were not subjects of proper motions to amend.

III.   **Dr. Gorum is Precluded from Making Argument on, or Basing any Claim of Liability or Damages on Dr. Sessoms' Acts Other Than the April 14, 2005 Recommendation, as he has Abandoned Such Claims and/or Narrowed his Claims.**

7.     In his Opposition to Summary Judgment Dr. Gorum conceded that the initial

investigation into grade changes and the AHDC hearing were **not** acts of retaliation. See Pltf. Mem.

at 38-39. Thus, to the extent that the Amended Complaint and/or Dr. Gorum's prior testimony can

be construed as challenging any such actions, Plaintiff has now conceded that they were not acts of

retaliation. See Reply at 2.

IV.   **Dr. Gorum Is Precluded from Providing any Testimony About or Making any Arguments Concerning Disagreements Among the Committee Members or Alleged Tampering of the Committee Deliberations or Process**

8.     Dr. Gorum first raised these allegations in his discovery responses (see Pltf's Resp. to

Defs' First Interrog. No. 16; attached as Ex. B) and then in his deposition (Gorum Dep. at 214-219;

attached as Ex. C). After deposing the Chair of the AHDC, Dr. Yaw Ackah, Plaintiff did not raise

these allegations in his Opposition and, in fact, affirmatively relies on the consensus and conclusions

of the AHDC. See Pltf. Opp. At 32, 36. Dr. Gorum's earlier opinions were based upon erroneous

information or hearsay and have now apparently been abandoned as unsupported by the evidence.

He should be precluded from raising them again.

**V.    Dr. Gorum Should be Precluded from Introducing Evidence Concerning Alleged Injury to his Reputation Arising from Acts Subsequent to his Termination.**

9.    When questioned at his deposition regarding the basis for his claim that President Sessoms had damaged his reputation, Dr. Gorum focuses on the publicity surrounding DSU's announcement in 2006 of an NCAA investigation around Dr. Gorum's grade changes for student athletes. (Gorum Dep. at 122-123). This incident was not identified in the Complaint as an act of retaliation, was not mentioned in any discovery responses, and Plaintiff has not sought to amend his Complaint. It is factually distinct from the rest of his case and occurred long after the April 14, 2005 recommendation that is the only alleged adverse action. It is clearly outside the scope of the Complaint, as narrowed by the motions and Pre-trial Order. The risk remains, however, that if Dr. Gorum is questioned regarding his damages, he is likely to raise this issue, which is not relevant to any other claim. Such evidence should be excluded.

10.    Even assuming, _arguendo_, that the Court finds that testimony relating to any of the foregoing changed or abandoned theories is relevant and admissible, the testimony should still be excluded because it is more prejudicial than probative under Federal Rule of Evidence 403.

WHEREFORE, Defendants respectfully request that the Court preclude Dr. Gorum from offering into evidence, referring to at trial or introducing any evidence based on his changed or abandoned theories.

OF COUNSEL

Robert L. Duston
SAUL EWING LLP
2600 Virginia Avenue, N.W.
Suite 1000
Washington, DC 20037-1922
(202) 333-8800
rduston@saul.com

Dated:  November 26, 2007

/s/ Michael R. Robinson
Kimberly L. Gattuso (No. 3733)
Michael R. Robinson (No. 4452)
SAUL EWING LLP
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, Delaware 19899-1266
(302) 421-6800
kgattuso@saul.com
mrobinson@saul.com

_Counsel for Defendants_

# Exhibit A



Not Reported in F.Supp.2d                                                    Page 1

Not Reported in F.Supp.2d, 2006 WL 2927546 (E.D.Mich.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Greenfield v. Sears, Roebuck and Co.
E.D.Mich.,2006.
Only the Westlaw citation is currently available.
United States District Court,E.D.
Michigan,Southern Division.
Allen GREENFIELD, an individual, Plaintiffs,
v.
SEARS, ROEBUCK AND CO., a foreign
corporation, Defendant.
**No. 04-71086.**

Oct. 12, 2006.

Michael L. Pitt, Beth M. Rivers, Pitt, Dowty, Royal
Oak, MI, for Plaintiffs.
Charles C. Dewitt, Jr., Cathleen C. Jansen, Dewitt,
Balke, Detroit, MI, for Defendant.

*OPINION AND ORDER:*

*(1) GRANTING DEFENDANT'S MOTION IN
LIMINE TO EXCLUDE THE ADMISSION OF
AND TESTIMONY REGARDING THE
ABANDONED AND DISMISSED FAILURE TO
PROMOTE CLAIMS (DKT. NO 35);*

*(2) GRANTING DEFENDANT'S MOTION IN
LIMINE TO EXCLUDE EVIDENCE AND
ARGUMENT REGARDING: (a) ALLEGED
STRAY REMARKS BY MCCURRY AND
CASSAR, (b) PLAINTIFF'S NOTES
REGARDING THOSE ALLEGED STRAY
REMARKS, AND (c) PLAINTIFF'S DISMISSED
RETALIATION CLAIM (DKT. NO. 38);*

*(3) DENYING DEFENDANT'S MOTION IN
LIMINE TO PRECLUDE THE PLAINTIFF
FROM TESTIFYING REGARDING SHAPIRO'S
QUALIFICATIONS (DKT. NO. 37)*

PAUL D. BORMAN, District Judge.
*1 Now before the Court is Defendant Sears'
Motions *In Limine* to: (1) Exclude the Admission of
and Testimony Regarding the Abandoned and
Dismissed Failure to Promote Claims (Docket No.
35);(2) Exclude Evidence and Argument Regarding:
(a) Alleged Stray Remarks by McCurry and Cassar;
(b) Plaintiff's Notes Regarding Alleged Stray
Remarks; and (c) Plaintiff's Dismissed Retaliation
Claim (Docket No. 38); and (3) Preclude Plaintiff
from Testifying Regarding Shapiro's Qualifications
(Docket No. 37). The Court held a motion hearing
on September 7, 2006. Having considered the entire
record and having held a hearing on this motion, for
the reasons that follow, the Court:
(1) GRANTS Defendant's Motion *In Limine* to
Exclude the Admission of and Testimony
Regarding the Abandoned and Dismissed Failure to
Promote Claims;
(2) GRANTS Defendant's Motion *In Limine* to
Exclude Evidence and Argument Regarding: (a)
Stray Remarks by McCurry and Cassar; (b)
Plaintiff's Notes Regarding Alleged Stray Remarks;
and (c) Plaintiff's Dismissed Retaliation Claim.
Additionally, the Court excludes any of Plaintiff's
notes regarding the above remarks or Plaintiff's
retaliation claim;
(3) DENIES Defendant's Motion *In Limine* to
Preclude Plaintiff from Testifying Regarding
Shapiro's Qualifications.

**I. FACTS**

In this action, Plaintiff filed a four (4) count
Original Complaint [FN1] on March 24, 2004
alleging age discrimination under Michigan and
Ohio state laws. Plaintiff filed his First Amended
Complaint two months later. On June 14, 2004,
Plaintiff filed a charge of age discrimination with
the EEOC. (Second Am. Compl. ¶ 63). The EEOC
issued Plaintiff a Right-to-Sue letter on July 9,
2004. Plaintiff then filed his Second Amended

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 2

Not Reported in F.Supp.2d, 2006 WL 2927546 (E.D.Mich.)
**(Cite as: Not Reported in F.Supp.2d)**

Complaint on September 10, 2004, adding a violation of the ADEA as a fifth count. Defendant filed its Motion for Summary Judgment on September 23, 2005. Plaintiff responded on October 17, 2005. Defendant replied on November 2, 2005.

> FN1. Count I: Violation of the Elliot-Larsen Civil Rights Act for Age Discrimination
> Count II: Violation of the Ohio Civil Rights Act for Age Discrimination
> Count III: Violation of the Elliot-Larsen Civil Rights Act for Retaliation
> Count IV: Violation of the Ohio Civil Rights Act for Retaliation

Plaintiff Allen Greenfield ("Plaintiff") is an individual and a resident of the State of Michigan. (Second Am. Compl. ¶ 1). Defendant Sears, Roebuck & Company ("Defendant") is a corporation with its principal place of business in Illinois and incorporated in a state other than Michigan.[FN2] *(Id.).*

> FN2. Though it is not stated in the Second Amended Complaint, Defendant is incorporated in the State of New York.

Plaintiff was born on February 4, 1943. *(Id.* at ¶ 5). He began his employment with Defendant on September 4, 1990 as a District Business Manager ("DBM").*(Id.).* Plaintiff was twice promoted to other DBM positions: in 1992 and 1994. (Docket No. 15, Def.'s Mem. Supp. Summ. J. 2). Joe McCurry ("McCurry"), the Detroit District General Manager ("Detroit DGM"), and Mary Trinkel, the Regional Human Resources Manager, promoted Plaintiff to the position of Human Resources District Manager ("HRDM") in 1996. *(Id.).* Plaintiff worked as a HRDM for six years. (Second Am. Compl. at ¶ 7). During his tenure as a HRDM, Plaintiff claims McCurry made ageist comments to him.*(Id.* at ¶ 8).

**\*2** In September of 2001, Walt Crockrel, the Store Manager of the Ann Arbor store retired. (Def.'s Br. 8). After hearing about the vacancy, Plaintiff told McCurry he would like to apply for the job.

(Docket No. 20, Pl.'s Resp. Ex. 5, Greenfield's Dep. 56: 18-19). McCurry allegedly informed Plaintiff that he "had limited potential because of [his] age and there were other candidates who had higher potential than [him]." (Docket No. 20, Pl.'s Resp. Ex. 5, Greenfield's Dep. 56: 22-24). The Ann Arbor job was eventually filled by Pam Blanchard, who was 14 years younger than Plaintiff. ((Docket No. 15, Def.'s Mem. Supp. Summ. J. 8). When a vacancy developed in the Novi store a month later, McCurry told Plaintiff not to post for the managers job because of age and his limited potential as a store manager. (Docket No. 20, Pl.'s Resp. 12). Scott Caines, who is 22 years younger than Plaintiff, was placed in the Novi store. ((Docket No. 15, Def.'s Mem. Supp. Summ. J. 9).

Plaintiff also alleges that McCurry stated that "age is always one of those factors to be considered in making promotional decisions" regarding associates. *(Id.).* Further, Plaintiff claims that from the time he became a HRDM, he noticed a continuing pattern of age discrimination by Defendant.*(Id.).*

Plaintiff contends that on October 25, 2001, McCurry made a discriminatory statement regarding Paul Ciaramitaro ("Ciaramitaro") in a staff and store manager meeting. (Second Am. Compl. ¶ 11). McCurry allegedly remarked "that it was Ciaramitaro's age which prevented him from obtaining a favorable job in the reorganization." *(Id.).* Plaintiff claims that "McCurry praised Ciaramitaro as a merchant, but acknowledged his 'age' problem."[FN3] *(Id.).* Ciaramitaro relayed McCurry's comments to Plaintiff in his capacity as HRDM, and Plaintiff conducted an investigation and confirmed that McCurry made the statements. ( *Id* . at ¶ 12). In November of 2001, Plaintiff wrote a memo to the Regional Human Resources Manager, Merle Grizzell ("Grizzell"), regarding McCurry's ageist statements to Ciaramitaro. (Docket No. 20, Pl.'s Resp. 6). Grizzell did not perform a further investigation because McCurry told him the comments were made in jest and that Plaintiff did not produce any additional evidence of discrimination. (Docket No. 20, Pl.'s Resp. Ex. 7, Grizzell Dep. 25, 27). Grizzell only discussed the situation with Greenfield, McCurry and Grizzell's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 3

Not Reported in F.Supp.2d, 2006 WL 2927546 (E.D.Mich.)
(Cite as: Not Reported in F.Supp.2d)

superiors, Mike Reskey and Milt Mooney. Grizzell did not contact or interview any witnesses to McCurry's comments, including Ciaramitaro. (*Id.* at 24:8-22). Grizzell subsequently advised Plaintiff to apologize to McCurry for investigating him without informing him first. (*Id.* at 50:1-18).

> FN3. "McCurry [stated] that he wouldn't want to offer Ciaramitaro an opportunity with his 'age and only hard goods background.' McCurry then looked directly at Ciaramitaro and said, 'I guess, Paul, you can now sue me for age discrimination." (Second Am. Compl. ¶ 13).

In 2001, Defendant announced that it was undergoing a national reorganization and as a result, it was eliminating the HRDM position. (Second Am. Compl. ¶ 10). The effective date for the elimination of Plaintiff's position was August 31, 2002. ((Docket No. 15, Def.'s Mem. Supp. Summ. J. 2). Upon that date, Plaintiff had to find a new position or he would be terminated. (Docket No. 20, Pl.'s Resp. 1).

*3 In January 2002, McCurry retired and Winfrey Smith ("Smith") became the Detroit DGM. ((Docket No. 15, Def.'s Mem. Supp. Summ. J. 8). Plaintiff has not alleged that Smith discriminated against him. (Docket No. 20, Pl.'s Resp. Ex. 5, Pl.'s Dep. 128: 9-16).

After McCurry's retirement, Plaintiff claims he was discriminated against when Defendant chose younger individuals for the Lincoln Park and Ann Arbor SGM positions. In April and May 2002, Plaintiff was assigned to the Lincoln Park store as an interim store manager. (Docket No. 20, Pl.'s Resp. 7; Pl.'s Resp. Ex. 5, Pl.'s Dep. 126: 12-13). Smith told Plaintiff to stop searching for a job and move his things to the Lincoln Park store. (Docket No. 20, Pl.'s Resp. Ex. 5, Pl.'s Dep. 126:21-23). However, instead of being selected as the SGM, Smith told Plaintiff he would not be the Lincoln Park manager and the position was given to Pam Blanchard. (Docket No. 20, Pl.'s Resp. Ex. 5, Pl.'s Dep. 126: 17-19; Pl.'s Resp. 7). Plaintiff claims that, according to Smith, he did not get the permanent

SGM job at Lincoln Park because Smith could not " sell it" to Teresa Byrd, the Regional Manager. (Docket No. 20, Pl.'s Resp. Ex. 5, Pl.'s Dep. 127: 19-22).

Blanchard's move to the Lincoln Park store in June 2002 created an opening at a lower volume store in Ann Arbor. *(Id.)*. Plaintiff immediately applied for the open SGM position in Ann Arbor. *(Id.)*. Plaintiff called Larry Cassar ("Cassar"), the Toledo District General Manager ("Toledo DGM"),[FN4] to express his interest in the Ann Arbor position. (Docket No. 20, Pl.'s Resp. Ex. 5, Pl.'s Dep. 131). Cassar and Plaintiff spoke about Plaintiff's background, of which Cassar, according to Plaintiff, was very complimentary. *(Id.* at 131: 5-6). Cassar told Plaintiff during the conversation that he was a good candidate for the Ann Arbor job. (*Id.* at 131: 6-7).

> FN4. The Ann Arbor store was in the Toledo District. (Def.'s Br. 9). Cassar, the District Manager of the Toledo area, was at the same level as Smith, the Detroit District Manager. (Pl.'s Resp. Ex. 5, Pl.'s Dep. 130-31).

Cassar was looking for a candidate who had hard and soft line experience. (Docket No. 20, Pl.'s Resp. 8). Plaintiff, though more experienced in soft lines, had years of experience running large retail stores. *(Id.)*. Cassar eventually hired Jay Shapiro (" Shapiro") for the open Ann Arbor position. *(Id.)*. According to Plaintiff, Shapiro was younger and less qualified for the job. *(Id.)*.

In order to find a position before he was terminated, Plaintiff enlisted the help of Teresa Byrd ("Byrd"), the new regional manager. (Docket No. 20, Pl.'s Resp. 9). Plaintiff sent Byrd a letter and asked to meet with her to discuss his qualifications. *(Id.)*. Plaintiff applied and interviewed for a position as store manager in Strongsville, OH, but was not offered the position. (*Id.* at 10). However, Plaintiff received a call from DGM Rob Robinette after the interview, who informed him that an opening was created at the Randall Park store and offered Plaintiff the position of store manager. *(Id.)*. Plaintiff's store was in an economically depressed

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 2927546 (E.D.Mich.)
(Cite as: Not Reported in F.Supp.2d)

Page 4

area and had staffing and theft problems. (*See* Def.'s Br. Ex. 2, Robinette Dep. 6, 8, 17). As a result, Plaintiff could not "turn the store around." (Docket No. 20, Pl.'s Br. 10). On September 22, 2003, Plaintiff was placed on a performance improvement plan. *(Id.).* A week after Plaintiff was placed on the performance plan, he became emotionally incapable of continuing to work and left the employ of Defendant. *(Id.).*

**\*4** In its March 2, 2006 Opinion, the Court granted in part and denied in part Defendant's Motion for Summary Judgment. The Court granted Defendant's Motion for Summary Judgment on: (1) Plaintiff's Title VII and ELCRA claims under a theory of direct evidence; (2) Plaintiff's retaliation claim; and (3) Plaintiff's Ohio Civil Rights Act claims for age discrimination and retaliation. The Court denied Defendant's Motion for Summary Judgment on Plaintiff's Title VII and ELCRA claims under a theory of circumstantial evidence.

On March 16, 2006, Defendant timely filed a Motion for Reconsideration. On May 24, 2006, the Court granted in part and denied in part Defendant's Motion for Reconsideration. The Court granted Defendant's motion as to an unplead Title VII claim and Plaintiff's ADEA claim, but denied Defendant's motion as to its pretext and lack of record support arguments.

Defendant filed its motions *in limine* on July 18, 2006.

### *Defendant's Motion In Limine to Exclude the Admission of and Testimony Regarding the Abandoned and Dismissed Failure to Promote Claims (Docket No. 35)*

Defendant argues that Plaintiff abandoned all of his failure to promote claims, except for the Ann Arbor store manager position. Defendant avers that Cassar was the only decisionmaker who had anything to do with Defendant's decision not to promote Plaintiff to the Ann Arbor store manager position. Defendant contends that McCurry and Vest had nothing to do with the Cassar's decision, and testimony about them is irrelevant and thus inadmissible under

Federal Rule of Civil Procedure 401 and 402. Defendant also asserts that if the court decides that the abandoned and dismissed claims are relevant and admissible, the testimony should still be precluded because it is more prejudicial than probative under Federal Rule of Evidence 403.

Plaintiff did not respond to this motion.

## II. ANALYSIS

### A. Standard

Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. '"'A district court has 'broad discretion to determine matters of relevance.' " *Williams v. Nashville Network,* 132 F.3d 1123 (6th Cir.1997). " Evidence that is not relevant is not admissible." FED.R.EVID. 402. Federal Rule of Evidence 403 states:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

### B. Discussion

Plaintiff's Amended Complaint stated that he was denied five store management positions. The decisionmakers for three of the store management promotions which Plaintiff applied for and did not obtain was DDM Joe McCurry. Randy Vest, the vice-president for The Great Indoors, was the decisionmakers for one of the denied store management positions. Larry Cassar, the TDM, was the decisionmakers for the last store manager promotion that Plaintiff did not receive.

**\*5** Although Plaintiff claimed that he was denied

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 5

Not Reported in F.Supp.2d, 2006 WL 2927546 (E.D.Mich.)
**(Cite as: Not Reported in F.Supp.2d)**

five store management positions, he stated in his Response to Defendant's Motion for Summary Judgment that "[g]iven the vast evidence of discriminatory and retaliatory motive with regard to [the Ann Arbor position under Cassar], Plaintiff will abandon claims regarding other store management positions alleged in his Complaint."(Docket No. 20, Pl.'s Response to Def.'s Mot. Summ. J. 1 n. 1). As a result, on summary judgment, the Court only ruled on the 2002 Ann Arbor store manager promotion, which Plaintiff did not receive. The denial of this promotion is the scope of the trial.

Because the 2002 Ann Arbor promotion is the issue at trial, the previous positions that Plaintiff originally claimed to have been denied to him due to discrimination are irrelevant to the issue of whether he was denied the Ann Arbor store manager position due to discrimination on the part of Cassar. Further, the only decisionmakers relevant to Plaintiff's denial of the Ann Arbor store manager position was Cassar, who made the ultimate decision.[FN5]

> FN5. The Court previously ruled that McCurry did not make the decision whether to promote Plaintiff to the Ann Arbor position in 2002, indicating that McCurry retired six months before Cassar made the decision to select Jay Shapiro. (Docket No. 25, Opinion and Order 12).

Therefore, Plaintiff's four other failure to promote claims are separate incidents, and no longer before this Court. Accordingly, the Court finds that the abandoned and dismissed claims are irrelevant to the issue at bar, and are thus irrelevant and inadmissible under Federal Rule of Civil Procedure 401 and 402.

### III. CONCLUSION

Accordingly, the Court GRANTS Defendant's Motion *In Limine* to Exclude the Admission of and Testimony Regarding the Abandoned and Dismissed Failure to Promote Claims.[FN6]

> FN6. The Court finds it unnecessary to review Defendant's motion under Rule 403.

***Defendant's Motion In Limine to Exclude Evidence and Argument Regarding: (a) Alleged Stray Remarks by McCurry and Cassar; (b) Plaintiff's Notes Regarding Alleged Stray Remarks; and (c) Plaintiff's Dismissed Retaliation Claim (Docket No. 38)***

Defendant argues that evidence and argument relating to McCurry's alleged statements, Plaintiff's notes and Plaintiff's retaliation claim, must be precluded. Defendant contends that McCurry retired in January 2002, which was six months before Cassar's decision to select Shapiro over Plaintiff. Defendant argues that the Court already ruled that McCurry's statements were stray remarks which could not be used as direct evidence of discrimination. In light of the Court's prior ruling, Defendant avers that Plaintiff should be precluded from testifying about or offering evidence regarding McCurry's alleged comments, including his notes, because they are irrelevant. Defendant asserts that evidence and testimony of the dismissed retaliation claims should be excluded because it has no bearing on the issue of whether Cassar discriminated against Plaintiff on the basis of his age.

Defendant also argues that since McCurry's comments were stray remarks, Cassar's "echo" of McCurry's remarks are stray remarks as well. Defendant believes that Cassar's statements do not meet the *Cooley* factors.

Defendant contends that even assuming the Court finds that McCurry's comments, or Cassar's "echo" of McCurry's comments, were relevant and admissible, the comments are more prejudicial than probative, and should be excluded under Federal Rule of Evidence 403.

*6 Plaintiff argues that the statements made by McCurry and Cassar, as well as Plaintiff's notes regarding the remarks, are relevant to Plaintiff's *prima facie* case of age discrimination and therefore admissible under Rule 401 and 402. Plaintiff avers that the McCurry and Cassar's remarks are admissible when used as circumstantial evidence of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2006 WL 2927546 (E.D.Mich.)
(Cite as: Not Reported in F.Supp.2d)

discrimination. Plaintiff supports its position by arguing that while McCurry was not the ultimate decisionmakers, his statement and Cassar's echo of McCurry's statement, are indicative of a corporate bias at Defendant. Plaintiff also argues that McCurry's statement should not be excluded simply because it was made before the adverse action. Likewise, Plaintiff avers that the fact that McCurry was a non-decisionmakers does not detract from the admissibility of his remark.

Defendant replies that vague or isolated comments which were made by non-decisionmaker long before the adverse employment decision is made are not probative of discriminatory motivation by an employer. Defendant contends that because the Court already found McCurry's comments to be stray remarks as direct evidence, they are not probative and irrelevant to the issue. Defendant cites *Walker v. DaimlerChrysler,* Case No. 02-74698,Docket No. 185 (E.D.Mich. Oct. 20, 2005) (unpublished).

Defendant also argues that Cassar's echo of McCurry's comments must be excluded because (1) Cassar only repeated the comments made by McCurry; (2) Cassar had no decisionmaking authority relative to Store Manager promotions at the time of the "echo"; (3) Plaintiff has stated that he never heard Cassar say anything discriminatory about him. Defendant asserts that there is no evidence that McCurry influenced or was involved in Cassar's decision to promote Shapiro over Plaintiff. Defendant believes that the cases cited by Plaintiff are not on point.

## II. ANALYSIS

### A. Standard of Review

Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. ""Evidence that is not relevant is not admissible." FED. R. EVID . 402. "Although relevant, evidence

may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury ..."FED.R.EVID. 403."Situations in this area call for balancing the probative value of and need for the evidence against the harm likely to result from its admission."*Cooley,* 25 F.3d 1325, 1330 (6th Cir.1994). Evidence that has no direct bearing on the issue to be decided and embellishes the circumstantial evidence directed to that issue by adding "smoking gun" type evidence, should be excluded.*Schrand v. Fed. Pacific Elec. Co,* 851 F.2d 152, 156 (6th Cir.1988). While remarks made by a non-decisionmakers "are not indicative of discriminatory intent, the statements of managerial-level employees who have the ability to influence a personnel decision are relevant." *Johnson v. The Kroger Co.,* 319 F.3d 858, 868 (6th Cir.2003) (concluding in an admittedly close case that a managerial-level employee's comments were relevant when the employee played a significant role in the decisionmaking process and the statement was viewed in connection with the evidence concerning racial slurs and jokes).

### B. Discussion

#### 1. Stray Remarks by McCurry

*7 "Unless the statements of conduct of non[-]decisionmaker can be imputed to the ultimate decisionmaker, such statements or conduct '[can not] suffice to satisfy the plaintiff's burden ...' of demonstrating animus."*Nobel v. Brinker Int'l, Inc.,* 391 F.3d 715, 724 (6th Cir.2004) (citing *Bush v. Dictaphone Corp.,* 161 F.3d 363, 369 (6th Cir.1998) ; *see also Smith v. Leggett Wire Co.,* 220 F.3d 752, 759 (6th Cir.2000). It is not demonstrative of discrimination when an isolated discriminatory remark is made by someone who has no managerial authority over the alleged discriminatory decision. *Smith,* 391 F.3d at 760. "Comments made long before the adverse employment action and comments" by non-decisionmaker have no probative value in a disparate treatment case. *Shefferly v. Health Alliance Plan of Mich.,* 94 Fed. Appx. 275, 280 (6th Cir.2004) (unpublished); *see*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 2927546 (E.D.Mich.)
(Cite as: Not Reported in F.Supp.2d)

Page 7

*Krohn v. Sedgwick James of Mich, Inc.,* 624 N.W.2d 212, 300 (Mich.App.2001) ("[F]ederal courts have consistently held that isolated or vague comments made by non-decisionmaker long before the adverse employment decision is made are not probative of an employers' discriminatory motivation."). While remarks made by a nondecisionmakers "are not indicative of discriminatory intent, the statements of managerial-level employees who have the ability to influence a personnel decision are relevant." *Johnson v. The Kroger Co.,* 319 F.3d 858, 868 (6th Cir.2003).

Plaintiff's response cites *Abrams v. Lightolier Inc.,* 50 F.3d 1204 (3rd Cir.1995),[FN7] which found that " discriminatory comments by non-decisionmaker, or statements temporally remote from the decision at issue, may properly be used to build a circumstantial case of discrimination. *Id.* at 1214.In *Abrams,* the defendant argued that admission of evidence of an "ageist" comment was improper because the supervisor was not a decisionmaker for the plaintiff's termination. *Id.* Nevertheless, the court found that the supervisor was found to be a decisionmaker. *Id.* Additionally, the discriminatory comments by non-decisionmaker that the court was referring to dealt with "ageist" comments made by the same supervisor, regarding other employees in the company. *Id* . Dissimilar to *Abrams,* the comments Plaintiff claims are circumstantial in this motion are not made by the decisionmaker.

> FN7. Plaintiff also cites *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344 (6th Cir.1998), which follows *Abrams.*

In *Cooley,* the defendant appealed a jury verdict in an ADEA action in favor of the Plaintiff. *Id.* at 1327.The defendant argued that the district court had abused its discretion when it admitted testimony regarding the company president's ageist remarks. *Id.* at 1330.The court reviewed relevant case law and set forth factors to determine the admissibility of statement if offered to show employment:
In age discrimination cases, this court has examined statements allegedly showing employer bias by considering [1] whether the comments were made

by a decision maker or by an agent within the scope of his employment; [2] whether they were related to the decision-making process; [3] whether they were more than merely vague, ambiguous, or isolated remarks; [4] and whether they were proximate in time to the act of termination. However, this court has not previously expressly spelled out these considerations as a formal standard. We do so today.

*8 Id.

*Cooley* applies to the case at bar. While it appears that most case law applies the *Cooley* factors for statements brought as direct evidence, there is no case law declining to apply Cooley to statements used as circumstantial evidence.[FN8]Even though the statements are presented as circumstantial evidence, the Court finds that the *Cooley* factors are helpful in the analysis of whether stray remarks are relevant.

> FN8. This Court also applied *Cooley* in *Walker v. DaimlerChrysler,* Case No. 02-74698,Docket No. 185 (E.D.Mich. Oct. 20, 2005).

In the instant case, it is undisputed that McCurry was not involved in the decision to demote Plaintiff. Defendant seeks to exclude evidence and testimony of statements made by McCurry. The statements by McCurry at issue are: that "age is always one of those factors to be considered in making promotional decisions"; that a co-worker's age prevented him from obtaining a favorable job; [FN9] that Plaintiff "had limited potential because of [his] age and there were other candidates who had higher potential than [him];" and that Plaintiff should not apply for the managers job because of age and his limited potential as a store manager.[FN10]

> FN9. This remark was alleged to have been made at a staff meeting.
>
> FN10. McCurry is alleged to have made the last two remarks to Plaintiff when he applied for two different store manager positions.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 8

Not Reported in F.Supp.2d, 2006 WL 2927546 (E.D.Mich.)
(Cite as: Not Reported in F.Supp.2d)

Applying *Cooley,* McCurry was not the decisionmaker in Defendant's decision to place someone other than Plaintiff in the vacant Ann Arbor store manager position. Moreover, McCurry's statements were not related to the decisionmaking process. Though McCurry's statements were more than merely vague, ambiguous, or isolated remarks, his statements were not proximate in time to the act of termination.[FN11]McCurry also retired in January of 2002, six months before employment decision on the Ann Arbor store manager position.

> FN11. McCurry's statements were made prior to a letter sent to Merle Grizzel on November 2, 2001.

As a result, the alleged statements attributed to McCurry tend to be irrelevant under the *Cooley* factors to the determination at issue in this case.

Alternatively, Defendant argues that even if the stray remarks are relevant, their probative value is substantially outweighed by the danger of unfair prejudice, issue confusion or misleading the jury. Plaintiff responds that the remarks provide support to the fact that a corporate bias existed within Defendant.

"The risk of admitting evidence of a biased opinion made by an employee who is unrelated to the decisionmaking process is that, even if the remark is isolated, ambiguous, or remote in time, it unfairly suggests to the jury that the remark and its underlying motivation have the imprimatur of the employer."*Krohn v. Sedgwick James of Michigan, Inc,* 244 Mich.App. 289, 303 (2001).

The stray comments made by non-decisionmaker in the instant case are unduly prejudicial under Rule 403 because they would confuse the jury as to the actual issue of the case. Although discriminatory statements may reflect a cumulative managerial attitude that has influenced the decisionmaking process at Defendant, Plaintiff does not provide evidence of other manager's discriminatory statements to support that a corporate bias existed. The comments made by McCurry have no bearing on whether discrimination played a part in the

Plaintiff's demotion, and allowing these remarks may mislead the jury as to its importance. Therefore, the Court finds that the stray comments by non-decisonmakers are barred by Rule 403.

### 2. Stray Remarks by Cassar

*9 Defendant first contends that the *Cooley* factors should be used for determining the relevancy of the statements at issue. In *Cooley,* the defendant appealed a jury verdict in an ADEA action in favor of the Plaintiff.*Id.* at 1327.The defendant argued that the district court had abused its discretion when it admitted testimony regarding the company president's "ageist" remarks. *Id.* at 1330.The president's alleged comments were " 'I don't like to be around old people' and '[e]verybody over 30 years old needs to be put in a pen.... [I]f they don't want to be put in a pen, they should be confided to a concentration camp.' " *Id.* at 1329.The court reviewed relevant case law and set forth factors to determine the admissibility of statements when offered to show employment discrimination:
In age discrimination cases, this court has examined statements allegedly showing employer bias by considering [1] whether the comments were made by a decision maker or by an agent within the scope of his employment; [2] whether they were related to the decision-making process; [3] whether they were more than merely vague, ambiguous, or isolated remarks; [4] and whether they were proximate in time to the act of termination. However, this court has not previously expressly spelled out these considerations as a formal standard. We do so today.

*Id.*

*Cooley* applies to the case at bar. While it appears that most case law applies the *Cooley* factors to statements brought as direct evidence, there is no case law refusing to apply *Cooley* to statements used as circumstantial evidence. Even though the statements are now presented by Plaintiff as circumstantial evidence, as stated above, the Court finds that the *Cooley* factors assist in the analysis of whether stray remarks are relevant.

Plaintiff claims that Cassar "echoed" McCurry's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 2927546 (E.D.Mich.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 9

sentiments and reiterated that McCurry believed that age should be taken into account. Plaintiff only speaks generally to the comments allegedly made by Cassar. Plaintiff states that he remembers Cassar speaking about a promotional decision made by McCurry and that Cassar told him that McCurry said age has to be taken into consideration when people are promoted. (Greenfield Dep. 133:13-16). Plaintiff also testified that Cassar "echo ['d McCurry's] sentiments about age being part of a promotion factor." (Greenfield Dep. 134:3-4).

Applying *Cooley,* the comments were made by the decisionmakers, though the comments were not related to the adverse employment action. The comments were ambiguous and isolated remarks, having nothing to do with Plaintiff. Neither comment, on their face, strongly suggest that Cassar harbors a bias against older workers. Plaintiff even admits that Cassar was repeating what he had been told by McCurry. Nowhere does Plaintiff allege that Cassar made comments in which he conveyed that he agreed with McCurry's statement. Here, Cassar was merely "echoing," or repeating, McCurry's statements. Also, Defendant claims, and Plaintiff does not contest, that Cassar was a store manager at the time he "echoed" McCurry's statements. Cassar had no authority at the time to hire or fire store managers.[FN12] Indeed, on November 2, 2001, seven months before the Ann Arbor store manager decision was made by Cassar, Plaintiff wrote a letter to Merle Grizzell complaining of discriminatory comments. Nowhere in the letter does it mention any negative public or private statements by Cassar regarding age. (*See* Def.'s Br. Ex. 7, Grizzell Letter). Plaintiff contends that the comments "reflect a cumulative managerial attitude that has influenced Defendant's decision-making process for some time."(Pl.'s Resp. 9). But, as in the case with McCurry, Plaintiff has not offered specific statements by individual managers other than McCurry to support that a corporate bias or cumulative managerial attitude existed. Therefore, the Court finds that the stray comments by Cassar are barred.

> FN12. Plaintiff's deposition is unclear regarding exactly when Cassar made the

comments.

### 3. Retaliation Claim

\*10 Because the Court previously granted summary judgment to Defendant on Plaintiff's retaliation claim-finding that Plaintiff failed to show a causal connection between Grizzell's letter and Defendant's failure to promote-the Court finds that evidence and argument by Plaintiff on this claim is irrelevant to the issues of the case.

### III. CONCLUSION

Accordingly, the Court GRANTS Defendant's Motion *In Limine* to Exclude Evidence and Argument Regarding: (a) Stray Remarks by McCurry and Cassar; (b) Plaintiff's Notes Regarding Alleged Stray Remarks; and (c) Plaintiff's Dismissed Retaliation Claim. Additionally, the Court excludes any of Plaintiff's notes regarding the above remarks or Plaintiff's retaliation claim.

### *Defendant's Motion In Limine to Preclude Plaintiff from Testifying Regarding Shapiro's Qualifications (Docket No. 37)*

Defendant argues that Plaintiff's testimony regarding his opinion why Shapiro was promoted is inadmissible under Rule 701. Defendant contends that Plaintiff does not have facts within his personal knowledge Shapiro's qualifications. Defendant also argues that Plaintiff's testimony regarding Shapiro's qualifications is inadmissible hearsay under Federal Rules of Evidence 802 and 803. Defendant asserts that it is an out of court statement being offered to prove the truth of the matter asserted, *i.e.,* that Shapiro was not as qualified as Plaintiff. Defendant further asserts that Plaintiff's testimony regarding Shapiro's qualifications, and Plaintiff's subjective opinion of his own qualifications, is irrelevant under Rule 401, and thus inadmissible under Rule 402. Defendant avers that Plaintiff's testimony, even if relevant and admissible, is more prejudicial than probative under Rule 403. Defendant believes that Plaintiff's skewed testimony about Shapiro would

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 10

Not Reported in F.Supp.2d, 2006 WL 2927546 (E.D.Mich.)
(Cite as: Not Reported in F.Supp.2d)

unfairly prejudice Defendant because it would confuse the jury. More specifically, Defendant argues that the testimony would place the jury in a position whether to accept Plaintiff's opinion of Shapiro's qualifications, or Cassar's perception of Shapiro's qualifications, when only Cassar's perception matters.

Plaintiff responds that evidence regarding the skills and experience of both Plaintiff and Shapiro are relevant to the issue set for trial. Plaintiff contends that he would not testify about what Shapiro's experience or qualifications actually were, because he lacks personal knowledge about Shapiro. However, Plaintiff asserts that evidence of Shapiro's experience of qualifications would be presented through other witnesses and documents. Plaintiff avers that he then can present his own testimony comparing his opinion of his own qualifications, as compared to Shapiro's qualifications on the record, under Rule 701. Plaintiff argues that his testimony would provide a counterweight to Cassar's testimony and allow the jury to make its own determination. Plaintiff believes that the evidence would not be more prejudicial than probative under Rule 403, because the qualifications of Plaintiff and Shapiro will be on the record and the jury can make its own evaluation of the merits of the two candidates. Plaintiff argues that he is entitled to demonstrate that Defendant's claim that Shapiro was more qualified is unreasonable and unworthy of credence and his testimony comparing qualifications is relevant to this inquiry.

*11 Defendant replies that Plaintiff admits he has no personal knowledge about the qualifications of Shapiro. Thus, Defendant argues that the court should grant its motion on that basis alone. Defendant admits that it has not sought to exclude Plaintiff's testimony about this own qualifications or his testimony regarding what he was told were the qualifications Defendant was seeking in candidates for the store manager position. Defendant asserts that Plaintiff's lay opinion regarding the relative qualifications of himself and Shapiro are inadmissible under Rule 701 and irrelevant under Rule 401 and 402. Defendant believes Plaintiff cannot make comparison testimony because he has no first-hand knowledge of Shapiro's qualifications.

Defendant argues that *Bender v. Hecht's Department Stores*, 455 F.3d 612 (6th Cir.2006), clarified that Plaintiff's opinion regarding Shapiro's qualifications is irrelevant and inadmissible. Defendant avers that Plaintiff is not the factfinder and his subjective opinion comparing his qualifications with Shapiro's has no bearing on the issue presented to the jury.

## II. ANALYSIS

### A. Standard

Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. ""A district court has 'broad discretion to determine matters of relevance.' " *Williams v. Nashville Network*, 132 F.3d 1123 (6th Cir.1997). " Evidence that is not relevant is not admissible." FED. R. EVID. 402. Federal Rule of Evidence 403 states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Opinion testimony by lay witnesses is governed by Federal Rule of Evidence 701:If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

### B. Discussion

Plaintiff concedes that he does not have personal

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 2927546 (E.D.Mich.)
(Cite as: Not Reported in F.Supp.2d)

knowledge regarding Shapiro's qualifications. Likewise, Defendant concedes that it has not sought to exclude Plaintiff's testimony about his own qualifications or about the skills needed for the store manager position, as told to him by Defendant. Therefore, the only issue before this court in the instant motion is whether Plaintiff may testify as to his lay opinion regarding his qualifications compared to the evidence of Shapiro's qualifications submitted into evidence by Defendant

*12 Defendant ultimately argues that Plaintiff's perception of the qualifications of the candidates for the promotion is not relevant. Defendant asserts that what is relevant is the Cassar's perception of the qualifications of Plaintiff and Shapiro. Defendant supports its position with *Bender v. Hecht's Department Stores,* 455 F.3d 612 (6th Cir.2006).

In *Hecht's,* the found that the weight of qualifications evidence differs depending on whether a plaintiff presents other evidence of discrimination. The court found that when other evidence is presented, "that evidence [when paired with the qualifications evidence] might result in the plaintiff surviving summary judgment."*Id.* at 626-27.However, to survive summary judgment when little or no evidence of discrimination is proffered other than qualifications evidence, "the rejected applicant's qualifications must be so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former."*Id.* at 627.The court also held that "if two reasonable decisionmaker could consider the candidates' qualifications and arrive at opposite conclusions as to who is more qualified, then clearly one candidate's qualifications are not significantly better than the other's."*Id.* at 628.

With *Hecht's* in mind, Defendant avers that Plaintiff is not the factfinder and his opinion comparing Shapiro's qualifications with his own has no bearing on the issue decided by the jury. The Court does not find Defendant's argument convincing.

Before the *Hecht's* court was a summary judgment motion. The instant case has passed the summary judgment stage, as the Court denied Defendant's

summary judgment on Plaintiff's ELCRA claim on March 2, 2006. Additionally, *Hecht's* was decided on August 1, 2006, five months after this Court's summary judgment opinion. Further, by arguing that Plaintiff should not be allowed to give his opinion comparing Shapiro's qualifications with his own, it appears that Defendant seeks to keep Plaintiff from testifying as to why he believes there was discrimination. The jury will hear why Cassar thought Shapiro more qualified than Plaintiff. Likewise, under Rule 701, Plaintiff can give his lay opinion regarding why he believes he is more qualified than Shapiro. Plaintiff's testimony would be based on his perception of his qualifications and his time spent in retail management, as compared to the qualifications of Shapiro, which will be supported by evidence and testimony at trial.

In its supplemental brief, Defendant argues that *Devries v. Biolife Plasma Services, L.P.,* Case No. 05-684, 2006 WL 2700902 (W .D.Mich. Sept. 19, 2006) (Enslen, J.) (unpublished), an unpublished case out of the Western District of Michigan, supports its argument. However, *Devries* is not on point. In *Devries,* the court ruled on a Motion to Strike Affidavit. The case did not involve an evidentiary ruling on whether a party at trial can compare his own qualification with the qualifications submitted into evidence of another individual. *Devries* found that statements made in an affidavit regarding individuals who committed workplace violations should be stricken, even thought the information was taken from undisputed workplace records. *Id.* at 2. The rationale given was that the information is not based on the affiant's personal knowledge and is considered hearsay. *Id.* Here, the information will not be hearsay,[FN13] but evidence properly admitted at trial. Further, *Devries'* holding that lay witness testimony must be based on the witness's perceptions is not contrary to this opinion. Plaintiff will be testifying to his own qualifications, to which he has personal knowledge, and comparing his qualifications to Shapiro's qualifications submitted into evidence.

FN13. The Court finds that Plaintiff's testimony is not hearsay because he is not testifying as to Shapiro's qualifications, but

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 12

Not Reported in F.Supp.2d, 2006 WL 2927546 (E.D.Mich.)
**(Cite as: Not Reported in F.Supp.2d)**

> testifying to his own qualifications and
> comparing his qualifications with Shapiro's
> qualifications put into evidence.

**\*13** Plaintiff's testimony is not more prejudicial
than probative under Rule 403. Plaintiff is entitled
to demonstrate why he believes Defendant's
proffered reason was pre-textual. The jury is free to
evaluate the testimony of both Cassar and Plaintiff,
as well as the other evidence and testimony
presented. Thus, Plaintiff's testimony does not
prejudice Defendant.

Accordingly, the Court finds that Plaintiff may
testify to his own qualifications and compare his
qualifications with Shapiro's qualifications on the
record.

### III. CONCLUSION

For the reasons stated above, the Court DENIES
Defendant's Motion *In Limine* to Preclude Plaintiff
from Testifying Regarding Shapiro's Qualifications.

**SO ORDERED.**

E.D.Mich.,2006.
Greenfield v. Sears, Roebuck and Co.
Not Reported in F.Supp.2d, 2006 WL 2927546
(E.D.Mich.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit B

MAY-23-2007 WED 09:36 AM                          FAX NO.                          P. 03

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WENDELL GORUM, Ph.D., | CIVIL ACTION |
| Plaintiff, | NO. 06-565 (GMS) |
| v. | |
| ALLEN L. SESSOMS, Ph.D., | |
| Defendant. | JURY TRIAL DEMANDED |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S FIRST SET OF INTERROGATORIES

### GENERAL OBJECTIONS

1.  Plaintiff objects to each interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege, the attorney work product doctrine, any other applicable privilege, where it would result in disclosure of the mental impressions, conclusions, opinions, memoranda, notes of summaries, legal research or legal theories of Plaintiff's attorneys.

2.  Plaintiff objects to each interrogatory to the extent that it seeks information that would result in disclosure of the mental impressions, conclusions or opinions of Plaintiff's non-attorney representatives respecting the value or merit of the claim or defense, or respecting strategy or tactics.

3.  Plaintiff objects to each interrogatory to the extent that it seeks to impose obligations or burdens beyond those set forth in the Federal Rules of Civil Procedure and the applicable

-1-

MAY-23-2007 WED 09:36 AM                    FAX NO.                    P. 04

statutes, regulations and case law. Responses are limited to those required by the

applicable procedural rules and decisional authorities.

4.     Plaintiff objects to each interrogatory request to the extent that it uses undefined terms

and/or is vague, ambiguous, unintelligible, and unanswerable in its current form.

5.     Plaintiff objects to each interrogatory to the extent that it is overly broad, unduly

burdensome or oppressive.

6.     Plaintiff objects to each interrogatory to the extent that it seeks information that is neither

relevant nor reasonably calculated to lead to the discovery of admissible evidence.

7.     Plaintiff objects to each interrogatory to the extent that it requires production of

documents not within the present possession, custody, or control of Plaintiff.

8.     Plaintiff objects to each interrogatory to the extent that it requests documents that are

already in the possession of Defendant, or documents that are equally available to

Defendant.

9.     Plaintiff objects to each interrogatory to the extent that it seeks information and

documents that contain, report, describe, reflect, refer, or relate to facts or opinions held

or known by an expert retained or especially employed by Plaintiff in anticipation of

litigation or preparation of trial, and who is not expected to be called as a witness at trial,

on the grounds that this material is protected from discovery.

10.    Plaintiff objects to each interrogatory to the extent that it purports to require Defendant to

respond on behalf of any person or entity other than Plaintiff.

11.    To the extent Plaintiff objects to a particular interrogatory on the basis of a specific

objection, Plaintiff hereby states that he does not thereby waive these General Objections.

-2-

The foregoing objections apply to each of the responses to the interrogatories below, and where applicable, other objections are noted specifically.

## PRESERVATION OF RIGHTS

All answers to the following interrogatories are made, without in any way waiving or intending to waive, but on the contrary, intending to preserve and preserving:

1. All questions as to competency, relevancy, materiality, privilege, and admissibility for any purpose in any subsequent proceeding, the trial of this action, or any other action

2. The right to object on grounds of relevance, hearsay, or any other proper ground to the use of any of these responses, or the subject matter thereof, in any subsequent proceeding, the trial of this action, or any other action.

3. The right to object on any grounds at any time to a demand for further responses to these or any other interrogatories or other discovery proceedings involving or relating to the subject matter of these document requests herein answered.

4. The right at any time to revise, correct, supplement, clarify, and/or amend the responses and objections set forth herein.

## PLAINTIFF'S ANSWERS

1. The following Delaware State University ("DSU") faculty, staff, and/or administrators may have knowledge of facts relevant to this matter:

   Sandra Arnell, Former Executive Secretary to the President. Ms. Arnell has knowledge of facts and/or information regarding DeShawn Morris.

   Dr. Harold Aubrey, Former Director of Testing Center. Dr. Aubrey has knowledge of facts and/or information regarding student and faculty evaluations.

-3-

Dr. John Austin, Sr., Former Chair of Social Work.  Dr. Austin has knowledge of facts and/or information regarding the DSU grade change policy.

Dr. Winston Awadzi, Former Dean, School of Business. Dr. Awadzi has knowledge of facts and/or information regarding the DSU grade change policy.

Drexel Ball, Former Executive Assistant to the President.  Mr. Ball has knowledge of facts and/or information regarding the faculty report.

Dr. Kenneth Bell, Former Provost.  Dr. Bell has knowledge of facts and/or information regarding facts relevant to this matter including, but not limited to, the DSU grade change policy.

Dr. Katherine Berhalter, Former Chair of Art.  Dr. Berhalter has knowledge of facts and/or information regarding the DSU grade change policy.

Dr. Kofi Blay, Chair of Sociology.  Dr. Blay has knowledge of facts and/or information regarding the DSU grade change policy.

Joyce Bowers, Former Associate Registrar.  Ms. Bowers has knowledge of facts and/or information regarding the DSU grade change policy.

Ernestine B. Brown, Former Chair of Social Work.  Mr. Brown has knowledge of facts and/or information regarding the DSU grade change policy.

Cornelia Caballero, Former Registrar.  Ms. Caballero has knowledge of facts and/or information regarding the DSU grade change policy.

Dr. Maggie Claussel, Former Chair of Department of Consumer Sciences. Dr. Claussel has knowledge of facts and/or information regarding the DSU grade change policy and has knowledge of facts and/or information regarding Defendant's retaliation against Plaintiff.

Clifton Coleman, Former Director of Human Resources. Mr. Coleman has knowledge of facts and/or information regarding DSU's employment policies.

Lori Crawford, Former Chair, Visual and Performance Arts. Ms. Crawford has knowledge of facts and/or information regarding the DSU grade change policy.

Dr. LaPointe Davis, Former Chair of Department of Music. Dr. LaPointe has knowledge of facts and/or information regarding the DSU grade change policy.

Shelia Davis, Former Associate Director of Human Resources. Ms. Davis has knowledge of facts and/or information regarding the DSU grade change policy and has knowledge of facts and/or information regarding Defendant's retaliation against Plaintiff.

Dr. William B. DeLauder, Former President. Dr DeLauder has knowledge of facts and/or information regarding DSU policies during his tenure as President and knowledge and/or information regarding DeShawn Morris.

Eric Dodson, Former Instructor of Mass Communications. Mr. Dodson has knowledge of facts and/or information regarding the DSU grade change policy.

Dr. William Flayhart, Former Chair of History & Political Science. Dr. Flayhart has knowledge of facts and/or information regarding the DSU grade change policy.

Dr. Tommy Frederick, Former Dean of Arts & Sciences/Chair of Phys. Ed. Dr. Frederick has knowledge of facts and/or information regarding Plaintiff's termination.

Dr. Asgede Hagos, Professor of Mass Communications. Dr. Hagos has knowledge of facts and/or information regarding the DSU grade change policy.

Dr. Aleta Hannah, Former Chair of Department of Education. Dr. Hannah has knowledge of facts and/or information regarding the DSU grade change policy.

Dr. Aehsan Helmy, Chair, Department of Physics. Dr. Helmy has knowledge of facts and/or information regarding the DSU grade change policy.

Dr. Augustine Ikien, Chair, Economics. Dr. Ikien has knowledge of facts and/or information regarding the DSU grade change policy.

Dr. Edward Jackson, Department of English. Dr. Jackson has knowledge of facts and/or information regarding the DSU grade change policy and the faculty report.

Dawn Jones, Lecturer, Mass Communications. Ms. Jones has knowledge of facts and/or information regarding the DSU grade change policy.

Dr. Gholam Kabria, Chair, Education. Dr. Kabria has knowledge of facts and/or information regarding the DSU grade change policy.

Dr. J. Scott King, Chair of Department of English and Former President of DSU Chapter of AAUP. Dr. King has knowledge of DSU policies and practices.

Dr. Baruti Kopano, Former Professor in Mass Communications. Dr. Kopano has knowledge of facts and/or information regarding the DSU grade change policy.

Dr. William Lustfield, Professor, Sociology. Dr. Lustfield has knowledge of facts and/or information regarding the DSU grade change policy.

Dr. Albert Miller, Chair, Psychology. Dr. Miller has knowledge of facts and/or information regarding the DSU grade change policy.

James Mims, Former Contract Administrator. Mr. Mims has knowledge of facts and/or information regarding the DSU contract policy.

Patricia Morneau, Former Secretary, Mass Communications. Ms. Morneau has knowledge of facts and/or information regarding the DSU grade change policy.

-6-

Dr. Oriaku Nwosu, Chair, Foreign Languages. Dr. Nwosu has knowledge of facts and or

information regarding the DSU grade change policy.

Dr. Gustav Ofosu, Chair, Biology. Dr. Ofosu has knowledge of facts and/or information

regarding the DSU grade change policy.

Dr. Dandeson Panda, Former Chair, Marketing and Former Chair, Mass

Communications. Dr. Panda has knowledge of facts and/or information regarding the

DSU grade change policy.

Ronald Parr, Vice President, Business & Finance. Mr. Parr has knowledge of facts

and/or information regarding the DSU contract policy.

Dr. Dorene Petrosky, Chair, Biology. Dr. Petrosky has knowledge of facts and/or

information regarding the DSU grade change policy.

Dr. Marlene Saunders, Chair, Social Work. Dr. Saunders has knowledge of facts and/or

information regarding the DSU grade change policy.

Dr. Marcia Taylor, Former Professor, Mass Communications. Dr. Taylor has knowledge

of facts and/or information regarding the DSU grade change policy.

Dr. Henry N. Tisdale, Former Provost, DSU/President Claflin University. Dr. Tisdale

has knowledge of facts and/or information regarding the DSU grade change policy

Dr. Johnny Tolliver, Former, Provost. Dr. Tolliver has knowledge of facts and/or

information regarding the DSU grade change policy.

Dr. Felipe Toscano, Professor, Foreign Languages. Dr. Toscano has knowledge of facts

and/or information regarding the DSU grade change policy and the faculty report.

Dr Hanson Umoh, Chair, Mathematics. Dr. Umoh has knowledge of facts and/or

information regarding the DSU grade change policy.

Dr. Mary Watkins, Chair, Nursing. Dr. Watkins has knowledge of facts and/or information regarding the DSU grade change policy.

Dr. Mary Wyche, Assistant VP, Academic Affair/Ch., Phy Ed. Dr. Wyche has knowledge of facts and/or information regarding the DSU grade change policy.

The following DSU students may have knowledge of facts relevant to this matter:

Antonio Alvarez. (203) 981-0836. Mr. Alvarez has knowledge of facts and/or information regarding grade changing at DSU.

Shannon Bellamy. (717) 421-7662. Mr. Bellamy has knowledge of facts and/or information regarding grade changing at DSU and has himself filed a lawsuit regarding same.

April Brand. (215) 472-0395. Ms. Brand has knowledge of facts and/or information regarding grade changing at DSU.

Veronica Brinney. (302) 736-5859. Ms. Brinney has knowledge of facts and/or information regarding grade changing at DSU.

Aaron Matthews. (302) 628-7740. Mr. Matthews has knowledge of facts and/or information regarding grade changing at DSU.

Kenneth McClain. (956) 463-7466. Mr. McClain has knowledge of facts and/or information regarding grade changing at DSU.

Morgan Parker. (201) 248-0041. Ms. Parker has knowledge of facts and/or information regarding grade changing at DSU.

Christopher Young. (609) 377-6944. Mr. Young has knowledge of facts and/or information regarding grade changing at DSU.

2.    Please see Plaintiff's response to Defendant's Request for Production of Documents.

3.    Through this action, Plaintiff seeks compensatory damages, including but not limited to: pain, suffering, past economic loss, future economic loss, back pay, front pay, wage increases, loss of life's pleasures, loss of reputation, benefits, emotional distress and other damages; reasonable costs and attorney's fees; and punitive damages. Though Plaintiff has not specifically calculated his damage amounts at this time, Plaintiff has lost approximately $121,000 in lost past wages to date, calculated as the differential between his former and present salary; Plaintiff has lost life insurance valued at approximately $192,000; and Plaintiff lost early retirement incentive of $48,000. In addition, Plaintiff continues to incur lost wages and will incur lost wages in the future. Plaintiff has incurred substantial attorneys' fees and costs and will continue to incur attorneys' fees and costs in the future. Plaintiff seeks these and other damages in this action.

4.    Through this action, Plaintiff seek reinstatement to his former position, at his former salary and benefits.

5.    Objection. This interrogatory is overly broad and unduly burdensome.

MAY-23-2007 WED 09:38 AM                                          FAX NO.                              P. 12

6.      None in Plaintiff's possession.

7.      Objection. This Interrogatory calls for a legal conclusion which Plaintiff not equipped, nor qualified to answer.

8.      Professor and Chair of the Department of Mass Communications at Claflin University, Orangeburg, South Carolina. Plaintiff has held this position for approximately two (2) years. Plaintiff's salary is $75,000 annually.

9.      Please see Plaintiff's response to the preceding Interrogatory. In addition, Plaintiff applied to numerous positions which were posted in the "Chronicle of Higher Education."

10.     The wrongful actions of Defendant have caused Plaintiff to suffer severe depression, loss of reputation, emotional distress and mental anguish, loss of social relationships and contacts.

11.     Plaintiff will execute a Medical Authorization form authorizing Defendant to obtain his medical records.

12.     Objection. This Interrogatory calls for a legal conclusion which Plaintiff is not equipped nor qualified to answer. Without waiver of said objection, Plaintiff states as follows:

Please see Plaintiff's Amended Complaint in this action. By way of further response, Plaintiff states as follows: Plaintiff, acting as a student advisor, defended a student, DeShawn Morris, at a disciplinary hearing, advised him in his appeal of disciplinary action taken against him, openly supported him and assisted him in retaining an attorney and instituting a lawsuit against Defendant. Plaintiff spoke out and associated with individuals on matters of public concern related to DSU on a continuing and regular basis, including, but not limited to the Administration at DSU, which Defendant had knowledge of.

13.    Plaintiff was advised of this by multiple DSU faculty, staff and/or administration, including, but limited to DSU Associate Director of Human Resource, Sheila Davis, who warned Plaintiff in or about the Fall of 2003, that "they are after you."

14.    Plaintiff was told this by members of DSU faculty, staff and/or administration.

15.    At this time, Plaintiff has not determined each and every fact upon which he will rely in support of his claim that his advocacy on behalf of Mr. Morris was a proximate cause of his termination and discovery in this matter is ongoing. Notwithstanding, please see Plaintiff's Complaint in this action, as well as Plaintiff's responses to Interrogatories 12, 13 and 14 above.

16.    Plaintiff believes and claims in this action that the Ad Hoc Dismissal committee members

and their findings were influenced by Defendant.

Respectfully submitted,

**FROST & ZEFF**

GREGG L. ZEFF, ESQUIRE
Pier 5 at Penn's Landing
7 N. Columbus Boulevard
Philadelphia, PA 19106-1492
(215) 351-3333
*Attorneys for Plaintiff*

-12-

# Exhibit C



**WILCOX & FETZER LTD.**

In the Matter Of:

# Gorum

## v.

# Sessoms and Board of Trustees of Delaware State University

**C.A. # 06-565-GMS**

---

Transcript of:

# Wendell Gorum, Ph.D.
Volume # 2
June 26, 2007

---

Wilcox and Fetzer, Ltd.
Phone: 302-655-0477
Fax: 302-655-0497
Email: depos@wilfet.com
Internet: www.wilfet.com

Gorum v. Sessoms and Board of Trustees of Delaware State University
Wendell Gorum

| Page 214 | Page 216 |
|---|---|
| 1  my house to dispute the report. And though they were<br>2  not specific. So am I answering what you are asking?<br>3     Q. Dr. Gorum, I know that the difficulty with the<br>4  question is that based on that information, you now<br>5  believe that there may be some disagreement among the<br>6  members of the committee on some or many of the findings<br>7  that were ultimately in the report. I know that there<br>8  is that issue.<br>9     The broader question, do you believe that<br>10  any of the five members of the committee were motivated<br>11  in whatever they said or whatever they agreed on by your<br>12  protected first amendment activities?<br>13     A. No.<br>14     Q. So you don't have reason to believe that the<br>15  committee members, whether Dr. Ackah or the others<br>16  individually, were themselves retaliating against you<br>17  for some kind of free speech activities when they<br>18  drafted their conclusions, correct?<br>19     A. Correct.<br>20     Q. At one point, you had the opportunity to review<br>21  the ad hoc committee's report, correct?<br>22     A. Yes.<br>23     Q. At any point, did you make your own notes<br>24  regarding which findings and conclusions you believed | 1  for you, whether you agree with it, whether there is<br>2  evidence that you think contradicts it, and whether or<br>3  not there is, would you agree that there is at least<br>4  some evidence that supports it even though there is<br>5  other evidence that doesn't? I know you don't agree<br>6  with everything and I know there are things in the<br>7  record that you think the board should have considered.<br>8  Those are the three questions.<br>9     Stop right there. Now, through that<br>10  portion, do you agree or disagree with those findings of<br>11  fact by the committee?<br>12     A. Disagree.<br>13     Q. Which aspects of it do you disagree with it and<br>14  why?<br>15     A. Well, I would have to see the grade sheets<br>16  because on most of the grade sheets I had signed as<br>17  teacher of record.<br>18     Q. Any other basis in the record why you disagree<br>19  with those conclusions?<br>20     A. Well, the other part of it is that they rejected<br>21  the argument that it was up to the registrar to accept<br>22  or reject requests for grade changes. And I'm saying<br>23  that that's vital because that's the way it's done.<br>24     Q. Any other basis? |

| Page 215 | Page 217 |
|---|---|
| 1  were accurate and which ones you disagreed with?<br>2     A. I didn't write them down, no.<br>3     Q. So, at any time, have you gone through and done<br>4  a checklist that says I agree with this, I don't agree<br>5  with this?<br>6     A. Yes, yes. I didn't write my response.<br>7     Q. Dr. Gorum, I'm not going to go through all 22<br>8  pages line by line. But I want to walk through the<br>9  section starting with Section 7, Pages 7 through 10,<br>10  starting on Page 6. On Pages 6 through 7, there are<br>11  certain findings of fact regarding your communications<br>12  with the registrar's office and the testimony of<br>13  Miss Bowers of the process of bringing the grades and<br>14  why she accepted grades. Do you agree or disagree with<br>15  the accuracy of those findings on Pages 6 through 7? I<br>16  was talking, Gregg, about the second full paragraph on 7<br>17  for these questions.<br>18     A. First paragraph —<br>19     Q. No, I'm not going to the first paragraph.<br>20  Starting with the second paragraph on the bottom of 6,<br>21  "this committee finds" down through the description of<br>22  Miss Bowers' testimony on Page 7.<br>23     And Dr. Gorum, on a number of these<br>24  findings, I'm going to have three different questions | 1     Now, on Pages 7 through 8, I will summarize<br>2  that. The committee rejected your claim that you had<br>3  contacted all the professors. And I know that you<br>4  disagree with that conclusion. I know that.<br>5     A. Yes.<br>6     Q. I know that it is your claim that you, in fact,<br>7  contacted every one of the professors, correct?<br>8     A. Correct.<br>9     Q. Now, would you agree, however, that there was a<br>10  dispute in the testimony on that between you and those<br>11  professors who testified and that the committee had to<br>12  resolve that credibility issue?<br>13     A. Yes, at that time, yes. I would not be<br>14  surprised if like Dr. Kopano would not recant what he<br>15  said at this time, juncture.<br>16     Q. On Pages 8 through 9, there is a discussion of<br>17  Dr. Osei-Mensah and the changes. And the conclusion was<br>18  reached by the committee that Dr. Frederick had not<br>19  given cart blanche for those changes by you. I assume<br>20  that you disagree with that conclusion.<br>21     A. Vehemently.<br>22     Q. I know that you testified regarding what<br>23  Dr. Frederick said and didn't say and all the problems<br>24  in Dr. Osei-Mensah's class. Would you agree that at the |

16 (Pages 214 to 217)

Gorum v. Sessoms and Board of Trustees of Delaware State University
Wendell Gorum

Page 218

1  time the committee engaged in those deliberations there
2  was a dispute of fact between you and Dr. Frederick's
3  testimony over what was said and what was meant that the
4  committee had to resolve?
5      A.  Yes.  May I add something here as to this?  At
6  some point, I don't remember, Dr. Bell was involved in
7  the incident, was asked in the incident of
8  Dr. Osei-Mensah, and he knew about the problems that
9  were occurring and he made a statement that -- he made
10  it to me and to Dr. King -- that I had a right to go,
11  not only I had a right to go into the class to try to
12  mediate but I had a responsibility.  And the other point
13  is that it was his policy that I could not contact
14  adjuncts because they had a case pending where the
15  adjunct wanted to charge the university.  So I had to
16  make a decision on my own.  And that's his secretary
17  telling me that.
18      Q.  Dr. Gorum, on Page 11 there is a finding by the
19  committee that having gone through a random sampling of
20  grade adjustment forms -- this is about five lines down
21  on Page 11 -- the committee made a finding that there
22  was not a single grade modification form, removal of
23  incompletes, missing grades, changes grades, that was
24  not correctly signed by the instructor of record or the

Page 219

1  dean or applicable and that in those rare changes where
2  one was signed by a chair or an instructor that the
3  registrar's office accepted them with authorization.  Do
4  you agree or disagree with that finding of fact?
5      A.  I don't know what they did.
6      Q.  You don't know what they did?
7      A.  Yeah.
8      Q.  Or the basis for that conclusion, correct?
9      A.  Yes.
10     Q.  So you don't have a basis to agree or disagree
11  with what they found on the forms?
12     A.  In part because usually when grade changes forms
13  were submitted and were entered, they threw them in the
14  trash.  So I don't know how they can prove.
15     Q.  But you haven't gone through every form that was
16  produced to the committee and produced to your lawyer of
17  grade changes forms; have you?
18     A.  No.
19     Q.  The committee then proceeded, on Pages 11
20  through 12, to make specific findings regarding removals
21  of incompletes, missing grades, withdrawals and
22  retroactive additions.  Other than the question of
23  consent from the professors in January, 2004, do you
24  agree or disagree with those findings?  Take a moment

Page 220

1  and read them.
2      A.  This is Page 11, removal, incompletes; is that
3  the section?
4      Q.  That's the section, down to the first two lines
5  on Page 13.
6      A.  But that is not correct.
7      Q.  Okay.  If there is something that is not correct
8  or you disagree with, let me know.
9      A.  I disagree.
10     Q.  Tell me which parts you disagree with and why.
11     A.  With internships and practicum, teachers from
12  the different areas were assigned responsibility of
13  covering those areas.  And I covered.
14     Q.  It is your position -- you testified to this
15  last time -- that you were, whether it was true on the
16  official roles or not, you considered yourself
17  co-instructor of record of every single internship and
18  practicum?
19     A.  Uh-huh.  If you go back and look at some of the
20  grade sheets, you see that I signed it.
21     Q.  And you have stated you considered yourself
22  co-instructor of record of every one of those classes?
23     A.  That's correct.
24     Q.  Regardless of what the official role said?

Page 221

1      A.  That's right.
2      Q.  Other than that issue -- keep going.  I want to
3  see if there is anything else on these four issues that
4  you disagree with.
5      A.  The problem with Jones arose because the school
6  went to a computerized system where she had to enter
7  grades.  And prior to that, everything was done jointly.
8  So actually the grades were, she gave incompletes to
9  students who were not working in the journalism -- PR
10  area which she covered.  That's where the problem --
11     Q.  The finding is simply that you removed
12  incompletes for two students in a course that was taught
13  by her and in January you removed others from the fall
14  of 2003.  Those are accurate findings, correct, you
15  removed incompletes for students in Miss Jones' class?
16     A.  In 2003?  What I am saying is that, during that
17  time, I'm almost sure I was a co-instructor and I signed
18  the grade sheet.
19     Q.  In the missing grade section, there is a finding
20  regarding missing grades from 2003 in a class by
21  Dr. Kopano.  That is accurate, correct, missing grades?
22     A.  What is your question again?
23     Q.  This finding is accurate that you submitted a
24  missing grade, a B in a radio station operations class

17 (Pages 218 to 221)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

WENDELL GORUM, Ph.D.,                      )
                                           )
            Plaintiff,                     )
                                           )          Civil Action No. 06-565-GMS
      v.                                   )
                                           )
ALLEN L. SESSOMS, Ph.D.,                   )
                                           )
            and                            )
                                           )
BOARD OF TRUSTEES OF                       )
DELAWARE STATE UNIVERSITY,                 )
                                           )
            Defendants.                    )


## CERTIFICATION OF COUNSEL IN ACCORDANCE WITH L.R. 7.1.1

I, Michael R. Robinson, hereby certify that Defendants' counsel has made reasonable

efforts to reach agreement with the opposing attorneys on the matters set forth in

DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE BASED ON CHANGED

OR ABANDONED THEORIES.

                              /s/ Michael R. Robinson
                              Michael R. Robinson (#4452)
                              SAUL EWING LLP
                              222 Delaware Avenue, Suite 1200
                              P.O. Box 1266
                              Wilmington, Delaware 19899-1266
                              (302) 421-6800
                              mrobinson@saul.com

Dated:  November 26, 2007

553438.3 11/26/07

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

WENDELL GORUM, Ph.D.,      )
                                )
        Plaintiff,         )
                                )    Civil Action No. 06-565-GMS
      v.                )
                                )
ALLEN L. SESSOMS, Ph.D.,    )
                                )
        and           )
                                )
BOARD OF TRUSTEES OF      )
DELAWARE STATE UNIVERSITY,  )
                                )
        Defendants.   )

### CERTIFICATE OF SERVICE

    I, Michael R. Robinson, hereby certify that on November 26, 2007 I caused a true and correct copy of the foregoing DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE BASED ON CHANGED OR ABANDONED THEORIES to be served electronically via CM/ECF system and first class, U.S. Mail, postage prepaid, upon the following:

Gilbert Shelsby, Esq.                 Gregg L. Zeff, Esq.
Michael J. Logullo, Esq.             FROST & ZEFF
SHELSBY & LEONI                 Pier 5 at Penn's Landing
221 Main Street                     7 North Columbus Boulevard
Stanton, DE 19804               Philadelphia, PA 19106

                                  /s/ Michael R. Robinson
                                  Michael R. Robinson (#4452)
                                  SAUL EWING LLP
                                  222 Delaware Avenue, Suite 1200
                                  P.O. Box 1266
                                  Wilmington, Delaware 19899-1266
                                  (302) 421-6800
                                  mrobinson@saul.com