## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

WENDELL GORUM, Ph.D.,                    :
                                          :
      Plaintiff,                     :
                                          :                Civil Action No. 06-565-GMS
    v.                                   :
                                          :
ALLEN L. SESSOMS, Ph.D.,                  :
    And                              :
                                          :
BOARD OF TRUSTEES OF                      :
DELAWARE STATE UNIVERSITY,                :
                                          :
      Defendants.                    :
                                          :

## PRETRIAL ORDER

This matter having come before the Court at a pretrial conference held pursuant to Rule

16 of the Federal Rules of Civil Procedure, and Greg Zeff, Frost & Zeff, Pier 5 at Penn's

Landing, 7 North Columbus Boulevard, Philadelphia, Pennsylvania 19106, and Gilbert Shelsby

and Michael J. Logullo, Shelsby and Leoni, 221 Main Street, Stanton, Delaware 19804, having

appeared as counsel for the Plaintiff, and Robert Duston, Saul Ewing LLP, 2600 Virginia

Avenue, N.W., Suite 1000, Washington, DC 20037, (202) 333-8800 and Kimberly Gattuso and

Michael R. Robinson, Saul Ewing LLP, 222 Delaware Avenue, Suite 1200, Wilmington,

Delaware 19899, (302) 421-6840, having appeared as counsel for the defendant, the following

actions were taken:

    1.    This is an action against defendants Allen L. Sessoms, Ph.D. ("Dr. Sessoms") and

the Board of Trustees of Delaware State University ("DSU") filed by Wendell Gorum, Ph.D.

("Dr. Gorum") under 42 U.S.C. § 1983 ("Section 1983") alleging that Defendants had engaged

in retaliation for speech protected under the First Amendment.   Jurisdiction of the Court is founded upon Sections 1331, 1343(3) and 1367 of title 28 of the United States Code and the First and Fourteenth Amendments to the U.S. Constitution.  Defendants dispute the asserted bases for jurisdiction under 42 U.S.C. §§ 1343(3) and 1367, but admit that dispute does not alter this Court's federal question jurisdiction.

      2.     The following stipulations and statements were submitted and are annexed to and made a part of this Order.

      (a)     stipulation of all uncontested facts, which will become a part of the evidentiary record in the case (and which may be read to the jury by the Court or any party) (Schedule A annexed hereto);

      (b)     statements of all contested facts and contested issues of law (Schedule B annexed hereto);

      (c)     except for rebuttal exhibits, schedules of all exhibits, including documents, summaries, charts and other items expected to be offered into evidence (Schedule C annexed hereto).  There are no other demonstrative evidence or experiments expected to be offered during trial;

      (d)     a list of names and addresses of the potential witnesses to be called by each party, with a statement of any objections to calling, or to the qualifications of, any witness identified on the list (Schedule D annexed hereto);

      (e)     statements setting forth the qualifications of each expert witness in such form that the statement can be read to the jury at the time the expert witness takes the stand (Not applicable as the parties are not presenting expert testimony);

(f)     a list of all depositions, or portions thereof, to be read into evidence, and statements of any objections thereto (Schedule E annexed hereto);

(g)     an itemized statement of special damages (Schedule F annexed hereto);

(h)     waivers of any claims or defenses that have been abandoned by any party (Schedule G annexed hereto);

(i)     trial briefs (filed contemporaneously herewith), jury instructions and verdict forms (filed contemporaneously herewith, and proposed voir dire questions (filed contemporaneously herewith);

(j)     Proposed findings of fact and conclusions of law are to be submitted by the parties depending on the Court's preference, pursuant to Kim Gattuso's letter to the Court dated November 21, 2007;

(k)     a statement summarizing the history and status of settlement negotiations (Schedule H annexed hereto);

(l)     The parties have completed all discovery in this matter.  There is no additional discovery anticipated by the parties; and

(m)     motions *in limine* (filed contemporaneously herewith).

3.     Trial of this case is expected to take 7 trial days.  The assigned trial date is January 7, 2008.

4.     This trial will be a trial by

       **X** Jury                    ___ Non-jury

5.     Plaintiff recommends that **six jurors,** plus two alternates, be selected at the commencement of the trial.  Defendants recommend that **six jurors,** plus two alternates, be selected at the commencement of the trial.

6.    This Order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

7.    Possibility of settlement of this case was considered by the parties as discussed in Schedule H annexed hereto.


/s/ Michael J. Logullo
Gilbert Shelsby (DSBA No. 2833)
Michael J. Logullo (No. 3851)
SHELSBY & LEONI
221 Main Street
Stanton, DE  19804
mlogullo@mslde.com
(302) 995-6210

   -and-

Gregg L. Zeff
Frost & Zeff
Pier 5 at Penn's Landing
7 North Columbus Boulevard
Philadelphia, PA 19106

*Counsel for Plaintiff Wendell S. Gorum, Ph.D.*


/s/ Michael R. Robinson
Kimberly L. Gattuso (DSBA No. 3733)
Michael R. Robinson (DSBA No. 4452)
SAUL EWING LLP
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE  19899
(302) 421-6800

   -and-

Robert L. Duston
SAUL EWING LLP
2600 Virginia Avenue, N.W.
Suite 1000
Washington, DC 20037-1922
(202) 333-8800
rduston@saul.com

*Counsel for Defendants Allen L. Sessoms, Ph.D. and the Board of Trustees of Delaware State University*


Dated:  November 26, 2007


SO ORDERED this ___ day of _____, 2007


_____
U.S. DISTRICT COURT CHIEF JUDGE
GREGORY M. SLEET

# SCHEDULE A

## STIPULATION OF UNDISPUTED FACTS

1.    The Plaintiff, Dr. Wendell Gorum is a resident of the state of Delaware.  He was formerly employed by Delaware State University ("DSU").

2.    The Defendant, Dr. Allen Sessoms, is President of Delaware State University.

3.    Delaware State University, which is sometime referred to as DSU or Del State, is a public institution of higher education, first founded in 1891.

4.    DSU is a historically black university.

5.    DSU is an agency or instrumentality of the State of Delaware.

6.    DSU is governed by a Board of Trustees ("Board"), whose members are appointed by the Governor of the State of Delaware.

7.    The DSU Board of Trustees is responsible for hiring and firing the President of DSU.

8.    Under state law, the Board of Trustees is the entity with the legal authority to hire and fire employees at DSU.

9.    Dr. Gorum does not claim that the DSU Board of Trustees directly committed any action that violated his Constitutional Rights.  The Board of Trustees has been named in this case as a defendant solely because, if there is a finding by the Court that Dr. Gorum should be reinstated to his position, the Board of Trustees is the only entity that can re-hire Dr. Gorum.

10.    Dr. Gorum was first hired by DSU in 1989 as a Professor of Mass Communications.

11.    At the time he was hired, Mass Communications was part of the Department of English. It later became a separate Department.

12.    Except for a one year sabbatical during the 1996-1997 academic year, Dr. Gorum was continuously employed by DSU from 1989 until May 2005.

13.    Dr. Gorum was given tenure in 1992.

14.    Dr. Gorum served as Department Chair and Professor of Mass Communications from Fall of 1997 until May 2004, when he was suspended.

15.    Throughout his employment with DSU, Dr. Gorum was a member of the American Association of University Professors ("AAUP"), and was subject to the terms and conditions of a collective bargaining agreement between DSU and the AAUP.

16.    The Collective Bargaining Agreement that is relevant to this case took effect in 2000.

17.    Dr. Wendell Gorum in married to Dr. Jacqueline Gorum. Dr. Jacqueline Gorum was employed by DSU from 1989 until she retired in 2004. At the time of her retirement, she was serving as Dean of the School of Professional Studies.

18.    In December 2002, a former DSU student, DaShaun Morris, who was a member of the DSU football team, was arrested for possession of a firearm on campus.

19.    DSU students are subject to the terms and conditions of the DSU Student Handbook. These include various procedural steps before a student can be suspended or expelled for violating DSU rules.

20.    Between November 2002 and May 2003, DaShaun Morris went through disciplinary procedures. At various steps he received assistance from Dr. Gorum, including a meeting between Dr. Gorum and President DeLauder. Dr. Gorum retained and paid for an

attorney to represent Morris.

21.    DaShaun Morris filed a lawsuit against DSU on August 2003 in Chancery Court.

22.    Dr. William DeLauder was President of DSU until June 30, 2003, when he retired.

23.    DSU conducted a search to select a new President during the Spring of 2003.

24.    In a May 2003 Meeting of the Faculty Senate, the Senate considered the results of interviews of the Presidential Candidates, including Dr. Sessoms. A motion was made by Dr. Samuel Hoff to not recommend any of the candidates, and to re-open the search. That motion was defeated, and the Faculty Senate voted to recommend the top three candidates, including Dr. Sessoms.

25.    Dr. Sessoms became President of DSU effective July 1, 2003.

26.    Glen Parker became employed as DSU's Registrar in 2003.

27.    Mark Farley became employed as DSU's Vice President of Human Resources in February 2004.

28.    DSU Registrar Glen Parker initiated an investigation into student grade changes in January 2004. Mr. Farley became involved in this investigation after he was hired.

29.    On March 5, 2004, President Sessoms signed a letter suspending Dr. Gorum, and recommended that Dr. Gorum be terminated for violating DSU policies and procedures regarding grade adjustments.

30.    Under Articles 10.4.1 and 10.4.2 of the 2000 Collective Bargaining Agreement, tenured professors cannot be terminated by the Board of Trustees without

"adequate cause."

31.    When Dr. Gorum was confronted with the notice of suspension and recommendation of termination, Dr. Gorum elected to exercise his right under the Collective Bargaining Agreement to have a hearing before an Ad Hoc Dismissal Committee ("AHDC" or "Committee") in accordance with CBA procedures.

32.    Dr. Gorum was suspended with pay from May 2004 until September 2004, when his suspension was made without pay.

33.    The Ad Hoc Dismissal Committee was made of five members of the faculty, who were jointly selected by DSU and the AAUP.

34.    Under the Collective Bargaining Agreement, the Ad Hoc Dismissal Committee was charged with hearing witnesses, taking evidence, and making findings of fact, conclusions and recommendations.

35.    After pre-hearing discovery, the AHDC conducted eight days of hearings.

36.    All testimony at the Committee hearings was taken under oath.

37.    Dr. Gorum attended the Committee hearings with attorney Gregg Zeff, who is representing Dr. Gorum in this lawsuit.

38.    The case of the DSU Administration against Dr. Gorum was presented by attorney Robert Duston, who is representing President Sessoms and the DSU Board of Trustees in this lawsuit.

39.    Both parties called witnesses, conducted cross-examination and presented other evidence during the Ad Hoc Dismissal Committee hearings.

40.    The Committee received a full transcript of the proceedings prior to issuing a final report of its findings and recommendations ("Report").

41.    Under the Collective Bargaining Agreement, the burden of proof at the Committee hearings was on DSU to establish "adequate cause" for Dr. Gorum's termination.

42.    Counsel for DSU and counsel for Dr. Gorum submitted post-hearing briefs to the Committee.

43.    The DSU Board of Trustees were sent copies of the parties' post-hearing briefs.

44.    The Committee made a number of findings of fact, conclusions and recommendations in its 21 page Report. This Report was hand-delivered to President Sessoms' office, and sent to the attorneys, on April 12, 2005.

45.    President Sessoms transmitted the Committee's Report to the Board of Trustees in a letter dated April 14, 2005. That letter, signed by President Sessoms, included a recommendation that Dr. Gorum be terminated.

46.    On April 14, 2005, DSU Vice President of Human Resources, Mark Farley, and President Sessoms appeared before the Board during a closed session to discuss the Ad Hoc Dismissal Committee Report.

47.    Following this meeting, Dr. Claibourne Smith, Chair of the DSU Board of Trustees, signed a letter on behalf of the Board dated April 21, 2005, terminating Dr. Gorum's employment.

48.    Dr. Gorum had a right under the CBA to appear before the Board and present further argument, but knowingly waived this right upon advice of counsel.

49.    This lawsuit was filed by Dr. Gorum on September 12, 2006.

# SCHEDULE B

## STATEMENT OF CONTESTED FACTS AND CONTESTED ISSUES OF LAW

I.    **ISSUES OF FACT RELATING TO THE ALLEGED "PROTECTED ACTIVITY**

    a.    **General Issues**.

        i.    Except as stated in Schedule A, DSU does not stipulate to any allegations of fact concerning the activities that Dr. Gorum claims are "protected activities" under the First Amendment.

    b.    **Dr. Gorum's alleged objection to hiring Dr. Sessoms as DSU President and recommendations to re-open the search.**

        i.    The parties dispute whether Dr. Gorum expressed any opposition to the hiring of Dr. Sessoms as DSU President and, if so, to whom and when.

        ii.    The parties dispute whether Dr. Gorum recommended that the search for a new President be re-opened and, if so, to whom and when.

    c.    **Dr. Gorum's alleged role in and reputation for advocating for or advising DSU students and faculty.**

        i.    To the extent this issue is still relevant to the remaining theories, the parties dispute whether Dr. Gorum was an advocate for and advisor to DSU students and faculty on their problems or disputes regarding academics, the administration, and disciplinary issues.

        ii.    To the extent this issue is still relevant to the remaining theories, the parties dispute whether Dr. Gorum had a reputation of being an advocate for and advisor to DSU students and faculty on their problems or disputes regarding academics, the administration, and disciplinary issues.

    d.    **Dr. Gorum's involvement in the planning of the DSU Fraternity Alumni Breakfast and the alleged invitation and later revocation of an invitation to President Sessoms as the keynote speaker.**

        i.    The parties dispute the nature and extent of Dr. Gorum's involvement in this event and the importance of this event.

    ii.  The parties dispute whether President Sessoms received an invitation to speak at the DSU Fraternity Alumni Breakfast, or received a later revocation of that invitation.

    iii.  If it is found that Cecil Wilson did extend an invitation to President Sessoms to speak at the DSU Fraternity Alumni Breakfast, the parties dispute whether President Sessoms was aware that he had been invited to speak, or whether he was aware of any subsequent revocation of that invitation.

    iv.  If it is found that President Sessoms did receive an invitation to speak at the DSU Fraternity Alumni Breakfast and that the invitation was revoked, the parties dispute whether Dr. Gorum played any role in revoking such invitation.

**e.  Dr. Gorum's assistance to DaShaun Morris during Morris' disciplinary proceedings and Morris' lawsuit against DSU.**

    i.  The parties dispute whether Dr. Gorum assisted Mr. Morris in filing and preparing for Morris' lawsuit against DSU, and the nature and extent of that assistance.

## II.  ISSUES OF FACT RELATING TO KNOWLEDGE OF PRESIDENT SESSOMS OF THE ALLEGED "PROTECTED ACTIVITY

**a.  General Issues.**

    i.  The parties dispute whether President Sessoms was aware of any of the actions that Dr. Gorum claims are activities protected by the First Amendment.

**b.  Dr. Gorum's alleged objection to hiring Dr. Sessoms as DSU President and recommendations to re-open the search.**

    i.  If it is found that Dr. Gorum did express opposition to the hiring of Dr. Sessoms as DSU President, the parties dispute whether President Sessoms was aware of such opposition by Dr. Gorum.

    ii.  If it is found that Dr. Gorum recommended that the search for a new President be re-opened, the parties dispute whether President Sessoms was aware of such recommendation by Dr. Gorum.

    iii.  The parties dispute whether President Sessoms was aware of the motion made before the Faculty Senate to re-open the search for a new President.

**c.  Dr. Gorum's alleged role in and reputation for advocating for or advising DSU students and faculty.**

    i.  To the extent this issue is still relevant to the remaining theories, if it is found that Dr. Gorum was an advocate for and advisor to DSU students and faculty on their problems or disputes regarding academics, the administration, and disciplinary issues, the parties dispute whether President Sessoms was aware of Dr. Gorum's role and activities in this regard.

    ii.  To the extent this issue is still relevant to the remaining theories, if it is found that Dr. Gorum did have a reputation of being an advocate for and advisor to DSU students and faculty on their problems or disputes regarding academics, the administration, and disciplinary issues, the parties dispute whether President Sessoms was aware of Dr. Gorum's reputation in this regard.

**d.  Dr. Gorum's alleged involvement in the revocation of President Sessoms' invitation to speak at the DSU Fraternity Alumni Breakfast.**

    i.  If it is found that President Sessoms did receive an invitation to speak at the DSU Fraternity Alumni Breakfast, that the invitation was revoked, and that Dr. Gorum played a role in the revocation, the parties dispute whether President Sessoms was aware that Dr. Gorum had played any such role.

**e.  Dr. Gorum's alleged assistance to DaShaun Morris during Morris' disciplinary proceedings and Morris' lawsuit against DSU.**

    i.  If it is found that Dr. Gorum did assist Mr. Morris in filing and preparing for Morris' lawsuit against DSU, the parties dispute whether President Sessoms was aware of such assistance, and the extent of his knowledge, if any.

## III.  ISSUES OF FACT RELATING TO PRESIDENT SESSOMS' MOTIVES FOR RECOMMENDING THE TERMINATION OF DR. GORUM

**a.  General Issues.**

    i.  The parties dispute whether Dr. Gorum's allegedly protected activities were a substantial or motivating factor in President Sessoms' decision to recommend the sanction of termination.

    ii.  The parties dispute whether President Sessoms would have made the same recommendation in the absence of Dr. Gorum's alleged protected activities.

    iii.  The parties dispute whether President Sessoms believed that his actions were proper in light of existing law.

    iv.  The parties dispute whether President Sessoms' articulated reasons for his decision to recommend Dr. Gorum's termination are pretext for retaliation for the alleged protected activities.

b. **Dr. Gorum's alleged objection to hiring Dr. Sessoms as DSU President and recommendations to re-open the search.**

    i. If it is found that Dr. Gorum did express opposition to the hiring of Dr. Sessoms as DSU President, the parties dispute whether such opposition regard was a substantial or motivating factor in President Sessoms' actions in recommending Dr. Gorum's termination to the Board of Trustees.

    ii. If it is found that Dr. Gorum recommended that the search for a new President be re-opened, the parties dispute whether such recommendation regard was a substantial or motivating factor in President Sessoms' actions in recommending Dr. Gorum's termination to the Board of Trustees.

c. **Dr. Gorum's alleged role in and reputation for advocating for or advising DSU students and faculty.**

    i. To the extent this is still relevant to the remaining theories, if it is found that Dr. Gorum was an advocate for and advisor to DSU students and faculty on their problems or disputes regarding academics, the administration, and disciplinary issues, the parties dispute whether Dr. Gorum's role and activities in this regard were a substantial or motivating factor in President Sessoms' actions in recommending Dr. Gorum's termination to the Board of Trustees.

    ii. To the extent this is still relevant to the remaining theories, if it is found that Dr. Gorum did have a reputation for being an advocate for and advisor to DSU students and faculty on their problems or disputes regarding academics, the administration, and disciplinary issues, the parties dispute whether Dr. Gorum's reputation in this regard was a substantial or motivating factor in President Sessoms' actions in recommending Dr. Gorum's termination to the Board of Trustees.

d. **Dr. Gorum's alleged involvement in the revocation of President Sessoms' invitation to speak at the DSU Fraternity Alumni Breakfast.**

    i. If it is found that President Sessoms did receive an invitation to speak at the DSU Fraternity Alumni Breakfast, that the invitation was revoked, and that Dr. Gorum played a role in the revocation, the parties dispute whether such revocation was a substantial or motivating factor in President Sessoms' actions in recommending Dr. Gorum's termination to the Board of Trustees.

e. **Dr. Gorum's alleged assistance to DaShaun Morris during Morris' disciplinary proceedings and Morris' lawsuit against DSU.**

    i. If it is found that Dr. Gorum did assist Mr. Morris in filing and preparing for Morris' lawsuit against DSU, the parties dispute whether such assistance was a substantial or motivating factor in President Sessoms' actions in recommending Dr. Gorum's termination to the Board of Trustees.

IV.  **ISSUES OF FACT RELATING TO THE DECISION TO TERMINATE DR. GORUM'S EMPLOYMENT FROM DSU**

    a.  The parties dispute what information was before the Board of Trustees when they made their decision to terminate Dr. Gorum's employment.

    b.  The parties dispute the extent to which the Board of Trustees considered the evidence before it.

    c.  The parties dispute the amount of weight that the Board of Trustees gave to the recommendations (oral and written) of President Sessoms.

    d.  The parties dispute the amount of weight that the Board of Trustees gave to the Ad Hoc Dismissal Committee Report.

    e.  The parties dispute the amount of weight that the Board of Trustees gave to the recommendations of Vice President Mark Farley.

    f.  The parties dispute whether the Board would have reached the same decision in the absence of the recommendation of President Sessoms.

V.  **ISSUES OF FACT RELATING TO DR. GORUM'S ALLEGED DAMAGES**

    **a.  Lost Wages and Benefits.**

        i.  The parties dispute what Dr. Gorum's retirement plans were at the time his employment was terminated.

        ii.  The parties dispute the terms of the early retirement package being offered by DSU in 2003.

        iii.  If Dr. Gorum would have taken the early retirement program that was offered, the parties dispute the extent to which he would have continued to work at DSU in any capacity, how long he would have worked, and the amount of income he would have received.

        iv.  The parties dispute what efforts Dr. Gorum engaged in to secure and keep alternative employment since May 2003.

    **b.  Other Alleged Economic Damages.**

        i.  The parties dispute whether Dr. Gorum suffered any economic damages as a result of President Sessoms' actions in recommending Dr. Gorum's termination to the Board of Trustees.

        ii.  If it is found that Dr. Gorum suffered economic damages damaged as a result of President Sessoms' actions in recommending Dr. Gorum's

termination to the Board of Trustees, the parties dispute the extent to which he suffered such damages.

**c. Alleged Damage to Reputation.**

i. The parties dispute whether Dr. Gorum's reputation was damaged as a result of President Sessoms' actions in recommending Dr. Gorum's termination to the Board of Trustees.

ii. If it is found that Dr. Gorum's reputation was damaged as a result of President Sessoms' actions in recommending Dr. Gorum's termination to the Board of Trustees, the parties dispute the extent to which his reputation was damaged.

**d. Alleged Compensatory Damages for Emotional Distress.**

i. The parties dispute whether Dr. Gorum suffered any emotional distress as a result of President Sessoms' actions in recommending Dr. Gorum's termination to the Board of Trustees.

ii. The parties dispute what other factors may have been alternative causes for any emotional distress Dr. Gorum may have suffered, including actions taken and other factors that occurred prior to President Sessoms' April 14, 2005 recommendations.

iii. If it is found that Dr. Gorum suffered emotional distress as a result of President Sessoms' actions in recommending Dr. Gorum's termination to the Board of Trustees, the parties dispute the extent to which he suffered such distress.

**VI.   ISSUES OF FACT RELATING TO CLAIM FOR PUNITIVE DAMAGES FROM PRESIDENT SESSOMS**

a. The parties dispute whether President Sessoms, in his individual capacity, acted with reckless or careless disregard or indifference to Dr. Gorum's Constitutional rights.

\*          \*          \*          \*          \*          \*          \*

**[Proposed] JOINT STATEMENT OF CONTESTED ISSUES OF LAW**

The following are those issues of law, or mixed questions of fact and law, that are in dispute.

## I.   ISSUES OF LAW RELATING TO PRESIDENT SESSOMS' ASSERTION OF QUALIFIED IMMUNITY

a.   The parties dispute whether Dr. Gorum's First Amendment rights would have been violated on the facts he has alleged.

b.   The parties dispute whether Dr. Sessoms participated in any violation of Dr. Gorum's Constitutional rights.

c.   The parties dispute whether President Sessoms took any action against Dr. Gorum that qualifies as an "adverse action" under First Amendment retaliation law.

d.   The parties dispute when Dr. Gorum learned of President Sessoms' actions.

e.   The parties dispute whether President Sessoms' actions against Dr. Gorum were sufficient to deter a person of ordinary firmness from exercising his or her First Amendment rights.

f.   If it is found that President Sessoms did violate a Constitutional right of Dr. Gorum, the parties dispute whether the right was clearly established at the time of Dr. Sessoms' conduct.

## II.   ISSUES OF LAW RELATING TO LIABILITY ON THE MERITS

a.   The parties dispute whether Dr. Gorum engaged in activity protected under the First Amendment.

b.   The parties dispute whether Dr. Gorum was speaking as a citizen for First Amendment purposes (i.e., whether Dr. Gorum's alleged First Amendment activities were made pursuant to his official duties).

c.   The parties dispute whether Dr. Gorum's speech and/or association were a matter of public concern.

d.   The parties dispute whether Dr. Gorum's speech and/or association had a substantial risk of interfering with the operation of the business or undermine the authority of the employer.

e.   The parties dispute whether President Sessoms took adverse action against Dr. Gorum.

### III.    ISSUES OF LAW RELATING TO COMPENSATORY DAMAGES

    a.   The parties dispute whether President Sessoms can be held liable as a matter of law for any damages arising from the termination of Dr. Gorum's employment.

    b.   The parties dispute whether Dr. Gorum acted reasonably to mitigate his alleged economic damages.

    c.   The parties dispute the point, if any, at which Dr. Gorum's claims for lost wages and benefits become unduly speculative.

    d.   The parties dispute whether Dr. Gorum is estopped from receiving economic damages, or limited in the damages he can recover, because of his own retirement plans.

    e.   The parties dispute whether Dr. Gorum can seek recovery for lost wages as a result of (a) the loss of his position as Department Chair or (b) anticipated future income as an adjunct professor following his planned early retirement.

    f.   The parties dispute whether permitting recovery for both the early retirement package and back pay would amount to a double recovery.

### IV.    ISSUES OF LAW RELATING TO PUNITIVE DAMAGES

    a.   The parties dispute whether President Sessoms, in his individual capacity, acted with reckless or careless disregard or indifference to Dr. Gorum's Constitutional rights.

### V.    ISSUES OF LAW RELATING TO EVIDENTIARY ISSUES

    a.   The parties dispute the relevancy of facts regarding the proceedings and the factors and evidence considered by the Ad Hoc Dismissal Committee, to the extent not stated in the AHDC Report.

    b.   To the extent still relevant to any remaining theories, the parties dispute the relevance of the AHDC decision-making process.

    c.   The parties dispute the extent to which information that was not considered by President Sessoms can be introduced to challenge his articulated motive.

    d.   The parties dispute the relevance, as proof of pretext, of giving greater weight to some AHDC findings than others.

# SCHEDULE C

### LIST OF EXHIBITS EXPECTED TO BE OFFERED INTO EVIDENCE

1.   The following exhibits were offered by Plaintiff without objection from Defendants, and can be entered into evidence.

| PLAINTIFF'S TRIAL EXHIBIT NO. | DESCRIPTION |
|---|---|
| 1. | 4/28/04 Letter from Kim Walker to Dr. Frederick |
| 2. | 3/26/04 Memo from Kim Walker to Mark Farley |
| 3. | 3/4/04 E-Mail from Glenn Parker to Mark Farley |
| 4. | 3/3/04 E-Mail from Glenn Parker to Mark Farley |
| 5. | 3/18/04 Memo from Glenn T. Parker to Beruti Kopano |
| 6. | 3/5/04 Letter from Dr. Sessoms to Dr. Gorum |
| 7. | 4/21/05 Letter to Dr. Gorum regarding Termination |
| 8. | AHDC Report |

2.  The following exhibits were offered by Plaintiff with objections by Defendants, and Plaintiff's responses thereto.

| EXHIBIT NO. | DESCRIPTION | OBJECTION/ NO OBJECTION * | PLAINTIFF'S RESPONSE |
|---|---|---|---|
| 9. | Classification of Students | CO—R; P | RM/L |
| 10. | DSU 2001-2004 Student Handbook | Objection—Relevance—failure to designate relevant portions | RM/L |
| 11. | Sample Change of Grade Request Form | CO—R; P | RM/L |
| 12. | 12/9/03 Memo from Glenn Parker to Records and Registration Staff | CO—R; H | RM/L |
| 13. | Fall 2003 Workload | CO—R; H; P | RM/L |
| 14. | Fall 2001 Grade Changes | CO—R; H;P | RM/L |
| 15. | Summary of Grade Changes | CO—R, U | RM/L |
| 16. | List of Registered Students and Non-Registered Students for Course | CO—R, U, P | RM/L |
| 17. | Change of Grade Request Forms for Fleming, McClain, Miji, Oliphant | CO-R, P | RM/L |
| 18. | Change of Grade Request Forms for Matthews, Gantt, Parker, Anderson, Sanon, McClain | CO-R, P | RM/L |
| 19. | 5/8/03 Grade Request Roster | CO-R, P | RM/L |
| 20. | Student Course Registration Audit Forms Re: Antonio E. Alvarez | CO-R, P | RM/L |
| 21. | DSU Removal of Incomplete Grade Form Re: Chris Asare and Aaron Matthews | CO-R, P | RM/L |
| 22. | Memo from Kopano to Parker | CO-R, P | RM/L |

| EXHIBIT NO. | DESCRIPTION | OBJECTION/ NO OBJECTION * | PLAINTIFF'S RESPONSE |
|---|---|---|---|
| | Re: Submission of grades for Asare and Matthews | | |
| 23. | Change of Grade Request Forms Re: Warren, Saunders, McClain, Young, Muckelroy, Stevens, Rose, Henry, Parker | CO-R, P | RM/l |
| 24. | Removal of Incomplete Grade Form 1/8/04 | CO-R, P | RM/L |
| 25. | Memo from Osei-Mensah to Parker Re: Grade Changes | CO-R, P | RM/L |
| 26. | DSU - Removal of Incomplete Grade Form 1/8/04 | CO-R, P | RM/L |
| 27. | Memo to Parker from Asgede Hagos dated 4/5/04 Re: Submission of grade changes | CO-R, P | RM/L |
| 28. | DSU - Removal of Incomplete Grade Forms Spring 2003 | CO-R, P | RM/L |
| 29. | Memos to Parker from Asgede Hagos dated 8/11/04 Re: Addition of Names and Grades | CO-R, P | RM/L |
| 30. | DSU - Removal of Incomplete Grade Forms for Marc Gorum and Antonio Alvarez dated 5/19/2003 | CO-R, P | RM/L |
| 31. | DSU - Removal of Incomplete Grade Forms for J. St. Jean dated 10/09/2003 | CO-R, P | RM/L |
| 32. | Change of Grade Request Form for Richard Taylor | CO-R, P | RM/L |
| 33. | 12/16/03 Council of Chairs Meeting Minutes | CO-R, H, P | RM/L |
| 34. | Change of Grade Request Form for Christopher Young | CO-R, P | RM/L |
| 35. | Change of Grade Request Form for Stanley Acluche | CO-R, P | RM/L |

| EXHIBIT NO. | DESCRIPTION | OBJECTION/ NO OBJECTION * | PLAINTIFF'S RESPONSE |
|---|---|---|---|
| 36. | 12/9/03 Letter from Christopher Young to Baruti Kopano | CO-R; H, P | RM/L |
| 37. | Letter of Appointment Dated 10/7/02 | CO-R; U, H, P | RM/L |
| 38. | Professional Employee Letter of Appointment Dated 6/3/03 | CO-R; U; H, P | RM/L |
| 39. | Memo and Notes to Frederick, Farley, Gorum and King regarding Grade Changes dated 3/2/04 | CO-U; R; H, P | RM/L |
| 40. | 1/04 Grade Request Roster | CO-R, P | RM/L |
| 41. | 10/29/03 Letter from Dr. Osei-Mensah to Dr. Gorum | CO-R; H, P | RM/L |
| 42. | CV of Dr. Osei-Mensah | CO-R; H, P | RM/L |
| 43. | 2000-2009 Collective Bargaining Agreement | Objection— Relevance—failure to designate relevant portions | RM/L |
| 44. | Memorandum to Dr. Sessoms regarding Recommendations of the Ad Hoc Dismissal Committee | O-U | RM/L |
| 45. | DSU Call Detail by Extension Report 1/1/04-1/30/04 | CO-R, P | RM/L |
| 46. | Court's Bench Ruling in Bellamy v. DSU | CO-R, H, P | RM/L |
| 47. | 10/12/05 Associated Press Release Regarding Academic Fraud at DSU | O—R; H; F | RM/L |
| 48. | DSU Mass Communication Program | O-U, R, P | RM/L |
| 49. | Dr. Gorum's Invitation to Meeting on 3/24/04 | CO-R; H | RM/L |
| 50. | Respondent's Hearing Exhibits - Bates-Stamp Gorum 0001-0178 | CO-R; H; F; Duplicative, P | RM/L |

| EXHIBIT NO. | DESCRIPTION | OBJECTION/ NO OBJECTION * | PLAINTIFF'S RESPONSE |
|---|---|---|---|
| 51. | 3/5/04 Letter from Dr. Gorum to Dr. Sessoms | CO-U; R; H, P | RM/L |
| 52. | Post-Hearing Brief of Dr. Gorum | O----R; H; F, P | RM/L |
| 53. | Transcripts of Ad Hoc Dismissal Hearing | CO-R; H; P; failure to designate portions; failure to exclude arguments of counsel and other immaterial matter. | RM/L |

* Key to Defendants' Objections and Plaintiff's Responses

   CO=Conditional Objection, subject to the courts rulings on one or more of Defendants' Motions in Limine
   R=Relevance, Fed. R. Evid. 402
   F=Foundation, , Fed. R. Evid. 901
   H=Hearsay, Fed. R. Evid. 802
   U=Document is not sufficiently identified to enable Defendants to identify it
   P=Probative value outweighed by risk of undue prejudice and jury confusion, Fed. R. Evid. 403
   RM/L=See Plaintiff's Response to Defendants' Motion in Limine

3.   The following exhibits were offered by Defendants.  The chart indicates whether they have been received into evidence and marked as indicated, or whether Plaintiff objected to their receipt in evidence on the grounds stated:

| **EXHIBIT NO.** | **DESCRIPTION** | **OBJECTION/NO OBJECTION** | **DEFENDANTS' RESPONSE** |
|---|---|---|---|
| 1. | AHDC Report | None | |
| 2. | Excerpts of DSU-AAUP Collective Bargaining Agreement | None | |
| 3. | Excerpts of The Delaware State University Student Handbook, 2002-2003 | None | |
| 4. | 12/9/02 Memorandum from C.J. Wyche to Charles Smith | R; H | R; NH |
| 5. | 12/9/02 Letter from Charles Smith to DaShaun Morris | R; H | R; NH |
| 6. | 12/16/02 Letter from Charles Smith to DaShaun Morris | R; H | R; NH |
| 7. | 12/21/03 Letter from Charles Smith to DaShaun Morris | R; H | R; NH |
| 8. | 3/3/03 DSU Faculty Senate Meeting Minutes | R; H | R; NH |
| 9. | 4/4/03 Letter from Charles Smith to DaShaun Morris | R; H | R; NH |
| 10. | 7/8/03 Letter from Charles Smith to Dr. Hallie Gregory | R; H | R; NH |
| 11. | 8/1/03 Letter from Catherine T. Hickey to David A. Arndt | R; H | R; NH |
| 12. | 8/22/03 Verified Court of Chancery Complaint, DaShaun Morris v. Delaware State University | R; H | R; NH |
| 13. | 10/6/03 Letter from Catherine T. Hickey to Dr. Allen Sessoms | R; H | R; NH |
| 14. | 10/6/03 Stipulation of Dismissal with Prejudice, DaShaun Morris v. Delaware State University | None | |
| 15. | 3/1/04 Memo from G. Parker re fall 03 grade change audit | R; H | R; NH |
| 16. | 3/4/04 E-mail from Dr. Kopano to G. Parker re Alvarez | R; H | R; NH |

| EXHIBIT NO. | DESCRIPTION | OBJECTION/NO OBJECTION | DEFENDANTS' RESPONSE |
|---|---|---|---|
| 17. | 3/5/04 Letter from A. Sessoms to W. Gorum | R; H | R; NH |
| 18. | 3/18/04 Letter from Lowan Pitt to DaShaun Morris | R; H | R; NH |
| 19. | 4/28/04 Letter from K. Walker to T. Frederick | R; H | R; NH |
| 20. | 5/4/04 Letter from K. Moses to DaShaun Morris | R; H | R; NH |
| 21. | 6/7/04 Letter from C. Smith to D. Morris | R; H | R; NH |
| 22. | 8/25/04 Letter from M. Farley to W. Gorum | R; H | R; NH |
| 23. | 4/14/05 Memorandum from A. Sessoms to Board of Trustees | R; H | R; NH |
| 24. | 4/14/05 Minutes of DSU Board Meeting | R; H | R; NH |
| 25. | 4/21/05 Letter from Claibourne Smith to W. Gorum | R; H | R; NH |
| 26. | 2004-2005 DSU Board of Trustees Roll Call | R; H | R; NH |
| 27. | Faculty Senate Bylaws | R; H | R; NH |
| 28. | DSU Violation/Infraction Report Forms for DaShaun Morris: Dates: | R; H | R; NH |

The following documents are be offered conditionally, in the event that the Court denies

Defendants' Motion in Limine and permits Plaintiff to introduce at trial exhibits or testimony

that was presented to the Ad Hoc Dismissal Committee, but which was not actually known to or

reviewed by President Sessoms at the time he made his recommendation.  In that event,

Defendants reserve the right to introduce the following additional exhibits, which DSU

introduced to the AHDC.  However, if the Court does grant Defendants' Motion in Limine, and

rules that evidence not known to President Sessoms is irrelevant and inadmissible, then none of

the following documents will be offered in evidence unless relevant to some other issue on

rebuttal or as background evidence for any witness called to testify.

| EXHIBIT NUMBER | DATE | DESCRIPTION | OBJECTION/NO OBJECTION | DEFENDANTS' RESPONSE |
|---|---|---|---|---|
| D -Supp.-1 | 4/28/2004 | letter from Kim Walker to Dr. Tommy Frederick re: sequence of events regarding grade changes (chronology attached) | R; H | CR-HE; NH |
| D -Supp.-2 | 3/26/2004 | Memo from Kim Walker to Mark Farley re: Student-Athlete Interviews (with misc. interview notes) | R; H | |
| D -Supp.-3 | 2001-2003 | Excerpts from Delaware State University Catalogue [see also Exhibit 46] | None | |
| D-Supp.-4 | | OMITTED | | |
| D -Supp.-6 | | Memos from Glenn Parker to Records and Registration Staff and Faculty | R; H | CR-HE; NH |
| D -Supp.-7 | | Mass Communication Department Assignments - Fall 2003 [see also Exhibit 56] | R; H | CR-HE; NH |
| D-Supp.-8 | | OMITTED | | |

| EXHIBIT NUMBER | DATE | DESCRIPTION | OBJECTION/NO OBJECTION | DEFENDANTS' RESPONSE |
|---|---|---|---|---|
| D -Supp.-9 | 3/1/2004 | G. Parker notes re: Fall 2003 Grade Change Audit results | R; H | CR-HE; NH |
| D -Supp.-10 | | Supplemental list of I grade changes identified by G. Parker March 2004 | R; H | CR-HE; NH |
| D -Supp.-11 | 1/8/2004 | Change of Grade Request Forms for 4 students in Professor Wickhams' class, Ethics and the Media, Fall 2003, signed by Dr. Wendell Gorum. | R; H | CR-HE; NH |
| D -Supp.-12 | 3/4/2004 | E-mail from Glenn T.Parker to Professor Wickham and his response re: Grade Changes | R; H | CR-HE; NH |
| D -Supp.-13 | 1/8/2004 | Change of Grade Request Forms for seven students in class taught by Gary Dawkins for Fall 2003, signed by Dr. Wendell Gorum:  [Aaron Matthews and Marques Gannt (Sound Production I) for Fall 2003 -- Morgan Parker, Tony Anderson and Fredo Sanon (Sound Production II) for Fall 2003 -- Morgan Parker and Kenneth McClain. (Radio Station Operations) for Fall 2003] | R; H | CR-HE; NH |
| D -Supp.-14 | 3/1-3/2004 | E-mail from Glenn T. Parker to Professor Gary Dawkins and Dr. Osei-Mensah and their responses | R; H | CR-HE; NH |
| D -Supp.-15 | 9/12/2003 | Change of Grade Request Form for Antonio Alvarez (Sound Production I), Spring 2003, taught by Dr. Kopano, changing grade from W to A (signed by Dr. Wendell Gorum) | R; H | CR-HE; NH |
| D -Supp.-16 | 3/18/2004 | E-mail from Dr. Kopano to | R; H | CR-HE; NH |

| EXHIBIT NUMBER | DATE | DESCRIPTION | OBJECTION/NO OBJECTION | DEFENDANTS' RESPONSE |
|---|---|---|---|---|
| | | Glenn T. Parker re: A. Alvarez grade change. | | |
| D -Supp.-17 | | Grade Request Rosters for *Sound Production I*, Spring 2003 (office copy and Kopano's copy); Student Course Registration Audit Forms for A. Alvarez in *Sound Production I*, Spring 2003; Section-Dependent Course Maintenance form for A. Alvarez in *Sound Production I* | R; H | CR-HE; NH |
| D -Supp.-18a | 7/16/2003 | Missing Grade Form for Chris Asare for grade A for (*Practicum* 55-425) and for grade B for (*Radio Station Operations* 55-362) (taught by Dr. Kopano) for Spring 2003 (signed by Dr. Gorum) | R; H | CR-HE; NH |
| D -Supp.-18b | 5/27/2003 | Missing Grade Form for Fall 2002 for Aaron Mathews for grade B for (*Sound Production I* 55-208) (taught by Dr. Kopano) | R; H | CR-HE; NH |
| D -Supp.-19 | 8/7/2004 | E-mail from Baruti N. Kopano to Glenn T. Parker re: added courses and grades for C. Asare (Spring 2003) and A. Mathews (Fall 2002) | R; H | CR-HE; NH |
| D -Supp.-20 | 1/8/2004 | Change of Grade Request Forms for 9 students in Broadcast Writing II for Fall 2003, taught by Dr. Osei-Mensah [Serena Warren, Blake Saunders, Kenneth McClain, Christopher Young, Carl Muckelroy, Christopher Stevens, LaByron Rose, Lawrence Henry, Korey | R; H | CR-HE; NH |

| EXHIBIT NUMBER | DATE | DESCRIPTION | OBJECTION/NO OBJECTION | DEFENDANTS' RESPONSE |
|---|---|---|---|---|
| | | Parker] (signed by Dr. Wendell Gorum) | | |
| D -Supp.-21 | 1/8/2004 | Removal of Incomplete Grade Form for 7 students [Kelle Alston through David Newman], *Broadcast Writing II*, Course No. 55-409 (Fall 2003) (taught by Dr. Osei-Mensah) | R; H | CR-HE; NH |
| D -Supp.-22 | 4/7/2004 | E-mail from Dr. Osei-Mensah to G. Parker re: Grade changes in *Broadcast Writing II* | R; H | CR-HE; NH |
| D -Supp.-23a | 1/8/2004 | Removal of Incomplete Grade Form for 1 student Reginald Rizer; and Missing Grade Form for 3 students [Sparkle William, Shannon Jennings and Antonio Alvarez] for *Practicum I*, Course No. 55-425 (Fall 2003) (taught by Dawn Jones) | R; H | CR-HE; NH |
| D -Supp.-23b | 1/27/2004 | Removal of Incomplete Grade Form for Marcus Lusby for *Practicum I*, Course No. 55-425 (Fall 2003) (taught by Dawn Jones) | R; H | CR-HE; NH |
| D -Supp.-23c | 8/12/2004 | E-mail from Dawn Jones to G. Parker re: Lusby, Marcus | R; H | CR-HE; NH |
| D -Supp.-24 | 4/5/2004 | E-mail from Dawn Jones to G. Parker re: Grade changes in *Practicum I* [see also Exhibit 23a] | R; H | CR-HE; NH |
| D -Supp.-25 | | Removal of Incomplete Forms and Missing Grade Forms for Professor Asgede Hagos | R; H | CR-HE; NH |
| D -Supp.-25a | 7/15/2003 | Missing Grade Form for Riley Peoples for grade A | R; H | CR-HE; NH |

| EXHIBIT NUMBER | DATE | DESCRIPTION | OBJECTION/NO OBJECTION | DEFENDANTS' RESPONSE |
|---|---|---|---|---|
| | | for (Practicum 55-425) for Spring 2003 (signed by Dr. Wendell Gorum) | | |
| D -Supp.-25b | 7/9/2003 | Missing Grade Form for Jamie Goodman for grade A for (Practicum 55-425) for Spring 2003 (signed by Dr. Wendell Gorum) | R; H | CR-HE; NH |
| D -Supp.-25c | 7/28/2003 | Missing Grade Form for Mandakoua Clark for grade A for (Practicum 55-425) for Spring 2003 (signed by Dr. Wendell Gorum) | R; H | CR-HE; NH |
| D -Supp.-25d | 7/5/2003 and 9/5/03 | Missing Grade Form for David Kuti for grade A for (Internship 55-450), and Anthony Leonard for grade A for (Practicum 55-425) for Spring 2003 (signed by Dr. Wendell Gorum, dated 7-5-03) | R; H | CR-HE; NH |
| D -Supp.-25e | 9/12/2003 | Missing Grade Form for Mecca Thomas for grade A for (Practicum 55-425) for Spring 2003 (signed by Dr. Wendell Gorum) | R; H | CR-HE; NH |
| D -Supp.-25f | 7/16/2003 | Missing Grade Form for Chris Asare for grade A for (Practicum 55-425) and for grade B for (Radio Station Operations 55-362) for Spring 2003 (signed by Dr. Wendell Gorum) | R; H | CR-HE; NH |
| D -Supp.-25g | 5/30/2003 | Removal of Incomplete Grade Form for Shannon Bellamy for grade A for (55-409) for Spring 2003; and Missing Grade Form for Shannon Bellamy for grade A for (Internship 55-450) and grade A for (Practicum 55-425); and for Vanita Bentley for grade A | R; H | CR-HE; NH |

| EXHIBIT NUMBER | DATE | DESCRIPTION | OBJECTION/NO OBJECTION | DEFENDANTS' RESPONSE |
|---|---|---|---|---|
| | | for (Practicum 55-425) for Spring 2003 (signed by Dr. Wendell Gorum) | | |
| D -Supp.-25h | 5/19/2003 | Missing Grade Form for Spring 2003 for Antonio Alvarez for grade A for (Practicum 55-425) (signed by Dr. Wendell Gorum) | R; H | CR |
| D -Supp.-25i | 5/21/2003 | Missing Grade Form for Fall 2002 for Aaron Matthews for grade A for (Internship 55-450) (signed by Dr. Wendell Gorum) | R; H | CR-HE; NH |
| D -Supp.-25j | 10/27/2003 | Missing Grade Form for Serena Warren for grade A for (Internship 55-450) for Spring 2002 (signed by Dr. Wendell Gorum) | R; H | CR-HE; NH |
| D -Supp.-25k | n.d. | Missing Grade Form for Mark Dungee for grade of A (6 credits) for (Practicum 55-425) for Spring 2002 (signed by Dr. Wendell Gorum) | R; H | CR-HE; NH |
| D -Supp.-26 | 8/11/2004 | E-mails from Asgede Hagos to Glenn T. Parker re: added grades | R; H | CR-HE; NH |
| D -Supp.-27 | 5/19/2003 | Missing Grade Form for Spring 2003 for Marc Gorum for grade A for TV Production III, Spring 2003 (55-373) (taught by Eric Dodson), for grade A for on 5/19/03 (signed by Dr. Wendell Gorum) | R; H | CR-HE; NH |
| D -Supp.-28 | 10/9/2003 | Missing Grade Form for Jill St. Jean for grade A for Practicum (55-425) (Spring 2002) (signed by Dr. Wendell Gorum) | R; H | CR-HE; NH |
| D -Supp.-29 | 1/29/2004 | Change of Grade Request Form for Richard Taylor | R; H | CR-HE; NH |

| EXHIBIT NUMBER | DATE | DESCRIPTION | OBJECTION/NO OBJECTION | DEFENDANTS' RESPONSE |
|---|---|---|---|---|
| | | for Fall 2003 (55-215) TV & Radio Announcing grade from B to A | | |
| D -Supp.-30 | | Council of Chairs -- select meeting minutes of College of Arts and Sciences | R; H | CR-HE; NH |
| D -Supp.-31 | 2001-2003 | Sample Change of Grade Forms from Dean Fredericks' Office (Fall 2001 - Fall 2003) | R; H | CR-HE; NH |
| D -Supp.-32 | 1997, 2000 | Sample Change of Grade Request Forms submitted by Dr. Wendell Gorum (as instructor), 1997 and 2000 | R; H | CR-HE; NH |
| D -Supp.-33 | | Sample Change of Grade Request Forms (signed by Dr. Gorum as chair) | R; H | CR-HE; NH |
| D -Supp.-33a | 1/8/1997 | Change of Grade Request Form from Dr. Wendell Gorum for Noel Acey in TV Prod. II (01-371) for Spring 1996 from F to B (signed by Dr. Wendell Gorum) (3 approval signatures, including Gorum) | R; H | CR-HE; NH |
| D -Supp.-33b | 1/8/1996 | Change of Grade Request Form from Dr. Wendell Gorum for Jon V. Carter in TV Prod. II (01-371), for Spring 1996 from F to B (signed by Dr. Wendell Gorum, dated 1-18-96) (3 approval signatures, including Gorum) | R; H | CR-HE; NH |
| D -Supp.-33c | 11/12/1996 | Change of Grade Request Form from Dr. Wendell Gorum for Kelley L. Clark in (01-371) for Spring 1996 from F to B (signed by Dr. Wendell Gorum 11-12-96) (3 approval signatures, including Gorum) | R; H | CR-HE; NH |

| **EXHIBIT NUMBER** | **DATE** | **DESCRIPTION** | **OBJECTION/NO OBJECTION** | **DEFENDANTS' RESPONSE** |
|---|---|---|---|---|
| D -Supp.-33d | 4/15/2002 | Sample Change of Grade Forms - Fall 2001 - Instructor: Asgede Hagos, Student: Keia Smith for Techniques of Layout & Design, Fall 2001 | R; H | CR-HE; NH |
| D -Supp.-33e | 12/9/2003 | Sample Change of Grade Forms - Fall 2003 - Instructor: Dr. Baruti Kopano, Student: Christopher Young for Intro to Mass Comm., Fall 2003 | R; H | CR-HE; NH |
| D -Supp.-34a | 10/7/2002 | Letter of Appointment 2002-2003 to Gary Dawkins | R; H | CR-HE; NH |
| D -Supp.-34b | 1/28/2004 | Letter of Appointment to Gary Dawkins | R; H | CR-HE; NH |
| D -Supp.-34c | 1/23/2004 | Recommendation letter from Dr. Wendell Gorum, Chair, to Dr. Tommy Frederick, Dean -- recommending Gary Dawkins for Spring Semester 2004 as Sound Production Manager | R; H | CR-HE; NH |
| D -Supp.-35 | 6/3/2003 | Letter of Appointment to Dwayne Wickham | R; H | CR-HE; NH |
| D -Supp.-36 | 3/2/2004 | handwritten notes of meeting attended by Dr. Tommy Frederick, Dr. Wendell Gorum, Mark Farley, and Dr. James Scott King | R; H | CR-HE; NH |
| D-Supp.-37 | | OMITTED | | |
| D -Supp.-38 | | Ethics and the Media | | |
| D -Supp.-38a | Fall 2003 | Final Grade Roster, dated 12/16/03 [see Exhibits 11 & 12] | R; H | CR-HE; NH |
| D -Supp.-38b | Fall 2003 | Syllabus, Fall 2003 | R; H | CR-HE; NH |
| D -Supp.-38c | Fall 2003 | Midterm Exam; Take | R; H | CR-HE; NH |

| EXHIBIT NUMBER | DATE | DESCRIPTION | OBJECTION/NO OBJECTION | DEFENDANTS' RESPONSE |
|---|---|---|---|---|
| | | Home Final; and Extra Credit Assignment, Fall 2003 | | |
| D -Supp.-38d | 11/3/2003 | Department of Intercollegiate Athletics Weekly Progress Report on JoAo Miji by Professor Wickham | R; H | CR-HE; NH |
| D -Supp.-39 | | Radio Station Operations | | |
| D -Supp.-39a | Spring 2003 | Final Grade Roster, dated 5/8/03 [see Exhibit 17] | R; H | CR-HE; NH |
| D -Supp.-39b | Spring 2000 | Syllabus (from a previous semester, Spring 2000) | R; H | CR-HE; NH |
| D -Supp.-39c | Spring 2003 | Grade Sheet, Spring 2003 | R; H | CR-HE; NH |
| D -Supp.-40 | | Intro to Mass Communications | | |
| D -Supp.-40a | Fall 2002 | Final Grade Rosters, for Sections 01 and 02, Fall 2002 | R; H | CR-HE; NH |
| D -Supp.-40b | Fall 2000 | Syllabus (from a previous semester, Fall 2000) | R; H | CR-HE; NH |
| D -Supp.-40c | Fall 2002 | Grade Sheet, Fall 2002 | R; H | CR-HE; NH |
| D -Supp.-41 | | Sound Production I | | |
| D -Supp.-41a | | Final Grade Roster for Sound Production I, dated _____ 5/8/03 | R; H | CR-HE; NH |
| D -Supp.-41b | Spring 2000 | Syllabus (from a previous semester, Spring 2000) | R; H | CR-HE; NH |
| D -Supp.-41c | ? | Grade Sheet for Sound Production I [see Exhibits 15 & 16 & 17] | R; H | CR-HE; NH |
| D -Supp.-42 | | Sound Production I | | |
| D -Supp.-42a | Fall 2003 | Final Grade Roster, Fall 2003 [see Exhibit 14] | R; H | CR-HE; NH |
| D -Supp.-42b | Fall 2003 | Department of Mass Communications | R; H | CR-HE; NH |

| EXHIBIT NUMBER | DATE | DESCRIPTION | OBJECTION/NO OBJECTION | DEFENDANTS' RESPONSE |
|---|---|---|---|---|
| | | description for Sound Production I (55-223); Fall 2003 Instructor Dawkins | | |
| D -Supp.-42c | Spring 2004 | Department of Mass Communications description for Sound Production I (55-223); Spring 2004; Instructor Dawkins [see Exhibit 13] | R; H | CR-HE; NH |
| D -Supp.-43 | | Sound Production II | | |
| D -Supp.-43a | Fall 2003 | Final Grade Roster, Fall 2003 [see Exhibit 14] | R; H | CR-HE; NH |
| D -Supp.-43b | Spring 2004 | Department of Mass Communications description for Sound Production II, Spring 2004 [see Exhibit 13] | R; H | CR-HE; NH |
| D -Supp.-43c | Fall 2003 | Department of Mass Communications description for Sound Production II, Fall 2003 | R; H | CR-HE; NH |
| D -Supp.-44 | | Radio Station Operations | | |
| D -Supp.-44a | Fall 2003 | Final Grade Roster [see Exhibit 14] | R; H | CR-HE; NH |
| D -Supp.-44b | Spring 2004 | Department of Mass Communications description for Radio Station Operations, Spring 2004 | R; H | CR-HE; NH |
| D -Supp.-45 | | Broadcast Writing II | | |
| D -Supp.-45a | Fall 2003 | Final Grade Roster for Broadcast Writing II, Fall 2003 | R; H | CR-HE; NH |
| D -Supp.-45b | | Course Description for Broadcast News writing | R; H | CR-HE; NH |
| D -Supp.-45c | 3/1/2003 | Letter from students re Dr. Osei-Mensah's Broadcast Writing II class | R; H | CR-HE; NH |
| D -Supp.-45d | 3/3/2003 | Letter from student re Dr. Osei-Mensah's Broadcast | R; H | CR-HE; NH |

| EXHIBIT NUMBER | DATE | DESCRIPTION | OBJECTION/NO OBJECTION | DEFENDANTS' RESPONSE |
|---|---|---|---|---|
| | | Writing II class | | |
| D -Supp.-45e | | Sample of prior Course Description for Broadcast Writing II (55-409) (Instructor Gorum) | R; H | CR-HE; NH |
| D -Supp.-46 | 5/8/2003 | Final Grade Roster for Practicum, Spring 2003, Instructor Hagos [See Exhibit 25] | R; H | CR-HE; NH |
| D -Supp.-47 | Fall 2003 | Final Grade Roster for Practicum, Fall 2003, Instructor Jones [See Exhibit 24] | R; H | CR-HE; NH |
| D -Supp.-48 | | Description of Department of Mass Communications Internship Program | R; H | CR-HE; NH |
| D -Supp.-49 | | Grade Roster Request for Internship, Spring 2003, Instructor Hagos | R; H | CR-HE; NH |
| D -Supp.-50 | 12/16/2002 | Grade Roster Request for Internship, Fall 2002, signed by Dr. Wendell Gorum | R; H | CR-HE; NH |
| D -Supp.-51 | | Academic Regulations and Policies from University Catalog 2001-2003 | R; H | CR-HE; NH |
| D -Supp.-52a | 3/31/2003 | Letter from Dr. Frederick to Dr. Kenneth Bell re recommendation of Gorum for chairperson | R; H | CR-HE; NH |
| D -Supp.-52b | 3/31/2003 | Memo from Dr. Frederick to Faculty Members re nomination of chairperson 2003-2004 academic year | R; H | CR-HE; NH |
| D -Supp.-53 | | Prior grievances regarding grade changes | | |
| D -Supp.-53a | 10/9/1997 | Letter from Noel Primos to Jonathan Axelrod re development of procedure for grade changes | R; H | CR-HE; NH |

| EXHIBIT NUMBER | DATE | DESCRIPTION | OBJECTION/NO OBJECTION | DEFENDANTS' RESPONSE |
|---|---|---|---|---|
| D -Supp.-53b | 3/18/1997 | Letter from Jane Buck (President American Assoc. of University Professors) to James Mims re demand for arbitration in the case of Dr. Raymond Grandfield re changing professor's grades without his consent | R; H | CR-HE; NH |
| D -Supp.-53c | 10/24/2000 | Informal Grievance form filed by Aleta Hannah against grade changes by Dr. Hammond | R; H | CR-HE; NH |
| D -Supp.-53d | 10/23/2000 | Letter from Aleta Hannah to Dr. William DeLauder (President) re filing of grievance | R; H | CR-HE; NH |
| D -Supp.-54 | 10/29/2004 | Call Detail by Extension Report for 1/1/04 to 1/30/04 for Dr. Wendell Gorum's office and to telephone in Registrar's office (including January 8, 2004) | R; H | CR-HE; NH |
| D -Supp.-55 | | Procedure for student complaints related to instruction | R; H | CR-HE; NH |
| D -Supp.-56 | | Department of Communications Revised Schedule of classes for Fall 2002 and Faculty Workload | R; H | CR-HE; NH |
| D -Supp.-57a | 9/30/2004 | Unofficial record of grades for Shannon Bellamy | R; H | CR-HE; NH |
| D -Supp.-57b | | Letter from Chad Edwards re hours worked by Shannon Bellamy at WHBG 20 (Summer 2003) | R; H | CR-HE; NH |
| D -Supp.-57c | | Appraisal of intern Shannon Bellamy prepared by Chad Edwards (Summer 2003) | R; H | CR-HE; NH |
| D -Supp.-57d | | Standard Course Registration Audit form for Shannon Bellamy (55-425); | R; H | CR-HE; NH |

| EXHIBIT NUMBER | DATE | DESCRIPTION | OBJECTION/NO OBJECTION | DEFENDANTS' RESPONSE |
|---|---|---|---|---|
| | | Spring 2003 | | |
| D -Supp.-58 | 10/28/2004 | Unofficial record of grades for Antonio Alvarez and Student Course Registration Audit form | R; H | CR-HE; NH |
| D -Supp.-59 | 10/28/2004 | Unofficial record of grades for Aaron Matthews and Student Course Registration Audit form | R; H | CR-HE; NH |

* Key to Plaintiff's Objections :

> R=Relevance, Fed. R. Evid. 402
> H=Hearsay, Fed. R. Evid. 802

Key to Defendants' Responses:

CR-HE=Conditionally Relevant, AHDC Hearing Exhibit.  If the Court over-rules Defendants' Motion in Limine and allows into evidence some or all of the exhibits produced during the AHDC hearings, even if not known by President Sessoms, then the rule of completeness should allow Defendants to introduce some or all of the Exhibits DSU introduced before the AHDC. Note that many of the exhibits in the group may also appear on Plaintiff's list, including PE50.

R=Relevant under Fed. R. Evid. 401 to one or more of Defendants' defenses, or as possible rebuttal or impeachment. Virtually all of these exhibits were previously submitted by one or both parties on the Motion for Summary Judgment.

NH=Not Hearsay under Fed. R. Evid. 801, or within one or more exceptions.  Every document falls within the business records exception under Fed. R. Evid. 803(6) and many are admissible as non-hearsay for the fact they were made, not for the truth of the matter.

# SCHEDULE D

## LIST OF NAMES AND ADDRESSES OF POTENTIAL WITNESSES

1.    **Plaintiff's List**

The following witnesses will be called by Plaintiff:

Dr. Wendall Gorum
Dr. Allen Sessoms
Dr. Claibourne Smith
Dr. Kenneth Bell
Dr. J. Scott King
Dr. Johnny Tolliver
Dr. Jacquelyn Gorum
Dr. Yaw Akah
Dr. La Pointe Davis
Mark Farley
Dr. Tommy Frederick

The following witnesses may be called by Plaintiff

Dr. Joyce Bowers
Ms. Rochelle Hopkins
Mr. James Mims
Dr. William B. DeLauder
Dr. Mary Watkins
Dr. Aleta Hannah
Dr. Maggie Clausell
Mr. Gary Dawkins
Dr. Michael Osei-Mensah
Aaron Matthews
Morgan Parker
Kenneth McClain
Carl Muckelroy
Serena Warren
Veronica Brinney
April Pierce
LaByron Rose
Courtney Brown
Chris Young

Cornilla Johnson
Dr. Filippo Toscano
Dr. Baruti Kopano
Dawn Jones
Sheila Davis
Hallie Berry

## Defendants' Objections to Plaintiff's Proposed Witnesses

Defendants make a conditional objection to the following witnesses being called as witnesses for the reasons set forth in their Motions in Limine, especially the motion to exclude evidence not know by the decisionmakers and the motion to exclude evidence of alleged comparators. Defendants do not believe any of these witnesses have testimony that is relevant to the remaining issues in this case, and therefore should be excluded under Fed. R. Evid. 401, or that the probative value of their testimony is substantially outweighed by the risk of unfair prejudice and jury confusion. In some cases, the alleged knowledge of these witnesses is also based solely on speculation and hearsay, so is excludable under Fed. R. Evid. 601, 602 and/or 801.

Joyce Bowers
Ms. Rochelle Hopkins
Dr. Kenneth Bell
Dr. J. Scott King
Mr. James Mims
Dr. William B. DeLauder
Dr. Mary Watkins
Dr. Johnny Tolliver
Dr. Aleta Hannah
Dr. Maggie Clausell
Mr. Gary Dawkins
Dr. Michael Osei-Mensah
Aaron Matthews
Morgan Parker
Kenneth McClain
Carl Muckelroy
Serena Warren
Veronica Brinney
April Pierce
LaByron Rose
Courtney Brown
Chris Young
Cornilla Johnson
Dr. Yaw Akah
Dr. Filippo Toscano
Dr. La Pointe Davis
Dr. Baruti Kopano

Dawn Jones
Dr. Tommy Frederick
Sheila Davis
Hallie Berry

Defendants object to the testimony of the following witnesses who were not previously disclosed in response to Defendants' discovery requests as persons with knowledge of facts relevant to Plaintiff's claims:

Rochelle Hopkins
Gary Dawkins
Dr. Michael Osei-Mensah
Carl Muckerlroy
Serena Warren
April Pierce
LaByron Rose
Courtney Brown
Cornilla Johnson
Dr. Yaw Ackah
Hallie Berry

## 2.    **Defendants' List**

The following witnesses will be called by Defendants:

Allen Sessoms, Ph.D.
Mark Farley
Claibourne Smith, Ph.D.

The following witnesses may be called by Defendants either for rebuttal, or as part of Defendants' case-in chief depending on the Court's ruling on the various Motions in Limine.

Akwasi Osei, Ph.D.
Kenneth Bell, Ph.D.
Cecil Wilson
Charles Smith, Ph.D.
Kim Walker
Yah Ackah, Ph.D.
Asgede Hagos, Ph.D.
Marcia Taylor, Ph.D.
Bradley Skelcher, Ph.D.
Baruti N. Kopano, Ph.D.
Dwayne Wickham
A. Richard Barros, Ph.D.
Stephen Taylor, Ph.D.
Samuel B. Hoff, Ph.D.

# SCHEDULE E

## <u>LIST OF DEPOSITIONS TO BE READ INTO EVIDENCE</u>

### <u>General Stipulations and Objections</u>

1.     The parties stipulate that  the testimony taken under oath before the Ad Hoc Dismissal Committee comes within the hearsay exception in Fed. R. Civ. P. 804(b)(1) if the declarant is unavailable as a witness.  The parties do not waive any other objections to such testimony, and note that because of the relaxed evidentiary standard used by the AHDC, significant portions of that testimony may not be deemed admissible under the Federal Rules.

2.     The parties disagree as to whether the deposition testimony taken in the case of *Morris v. DSU* comes within the hearsay exception in Fed. R. Civ. P. 804(b)(1) if the declarant is unavailable as a witness.

3.     The parties have not included designations of deposition testimony that may be used for impeachment of a witness under Fed. R. Civ. P. 32(a)(1).

4.     By including portions of depositions in this Schedule, the parties are not waiving their right to require the offering party to establish that the deposition testimony is admissible under Fed. R. Civ. P. 32(a)(2)-(3).  Nor are the parties waiving any other objections to such testimony.  Depending upon the Court's rulings on Defendants' Motions in Limine, significant portions of the testimony listed below by both parties might be deemed inadmissible under Fed. R. Evid. 401 and/or 403.

### Defendants'  Designations

Defendants reserve the right to read the following depositions taken in this case in the event that the witness is unavailable for trial:

a.     Deposition of Allen Sessoms

b.     Deposition of Mark Farley

c.     Deposition of Claibourne Smith

d.     Deposition of Dr. Osei

Defendants reserve the right to read the following testimony taken before the Ad Hoc Dismissal Committee  in the event that the witness is unavailable for trial, and the court has

otherwise permitted Plaintiff to introduce testimony regarding the merits of the issues before the AHDC.

    e.        Glen Parker

    f.        Dr. Johnny Toliver

    g.        Dr. Tommy Frederick

    h.        Dr. Baruti Kopano

    i.        Gary Dawkins

    j.        Dwayne Wickham

    k.        Dr. Kenneth Bell

In the event that the Court determines that testimony taken the Morris v. DSU case is admissible, and permits plaintiff to introduce any such testimony, then Defendants reserve the right to read the following testimony from that case in the event that the witness is unavailable for trial:

    l.        Dr. Charles Smith

    m.        Dr. William DeLauder

## Plaintiff's Designations

In addition to Defendant's designees, Plaintiff reserves the right to read the following depositions taken in this case in the event that the witness is unavailable for trial:

    a.        Hearing testimony of James Scott King

    b.        Hearing testimony of Joyce Bowers

    c.        Hearing testimony of Johnny Tolliver

    d.        Deposition of Dr. Ackah

    e.        Deposition of Kenneth Bell

    f.        Hearing Testimony of Dr. Tommy Frederick

    g.        Deposition of Jacquelyne Gorum

# SCHEDULE F

## ITEMIZED STATEMENT OF SPECIAL DAMAGES

1.    Dr. Gorum has suffered lost wages as follows:

    a.    Salary

        Dr. Gorum earned $96,000.00 per year as a full Professor, including summers and overloads at DSU.  Since termination, he has earned a total of $150,000.00 from Claflin University ($75,000.00 annually for two years).  He is currently unemployed.  Dr. Gorum seeks lost wages equal to the difference between $96,000.00 per annum, and what he has earned up until the time of trial.

    b.    Benefits and Costs

        Dr. Gorum was required to move away from his family when he worked at Claflin requiring additional out of pocket losses for lodging including $650.00 in rent and $200.00 in utility bills per month for two years.

        Dr. Gorum has also been required to pay for a supplemental medical insurance policy.

# SCHEDULE G

## **WAIVERS OF CLAIMS OR DEFENSES THAT HAVE BEEN ABANDONED**

1.    **Plaintiff has waived the following claims and/or theories:**

      a.    Plaintiff has waived any theory that he suffered any physical injury as a direct cause of President Sessoms April 14, 2005 recommendation.

      b.    Plaintiff has waived any claim that President Sessoms can be held liable for compensatory damages in his official capacity. The action for compensatory and punitive damages is being brought against Allen Sessoms in his individual capacity.

2.    **Defendant Allen Sessoms has waived the following defenses.**

      In light of Plaintiff's waivers above, President Sessoms waives the defense that plaintiff's exclusive remedy is through the Delaware Workers' Compensation law.

# SCHEDULE H

## STATEMENT SUMMARIZING SETTLEMENT NEGOTIATIONS

The parties have explored the prospects for settlement and alternative dispute resolution at various times throughout this litigation, up to the close of discovery. It is fair to describe the parties as at impasse.

The Board of Trustees, which is paying the costs of defense, and President Sessoms, have repeatedly stated that they would not consider any settlement that would provide compensation to the Plaintiff, and believe it important to uphold and defend this termination decision. They have indicated a willingness to waive any claims for sanctions or for recovery of their attorneys fees against Dr. Gorum.

Dr. Gorum is seeking to recover, at a minimum, the attorneys fess and costs incurred to date, and the value of the early retirement package he would have been eligible for in 2003.

Counsel have discussed whether there is any way to break this impasse. A pre-condition of any other settlement would require stipulations by Dr. Gorum that the findings of fact and conclusions of the Ad Hoc Dismissal Committee are correct, and that termination was an appropriate sanction for his conduct.

Counsel have concluded that given the respective positions of the parties, alternative dispute resolution is not likely to be of assistance at this time. Counsel have agreed to review the likelihood of settlement upon receiving the Court's ruling on Defendants' Motion for Summary Judgment.