IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WENDELL GORUM, Ph.D., : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> ALLEN L. SESSOMS, Ph.D., : <br> And : <br> : <br> BOARD OF TRUSTEES OF : <br> DELAWARE STATE UNIVERSITY, : <br> : <br> Defendants. : | Civil Action No. 06-565-GMS |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE BASED ON HEARSAY

Plaintiff, Wendell Gorum, Ph.D., by and through his attorneys, Gregg Zeff, Frost & Zeff and Michael J. Logullo, Shelsby & Leoni hereby responds to Defendant's Motion In Limine to exclude evidence and states as follows:

1.  Defendants claim evidence based on hearsay should be excluded. However, the testimony Defendants seek to have excluded is either not hearsay at all, or is otherwise admissible.

2.  Dr. Jacquelyne Gorum's statement about her invitation to Sessoms is not hearsay because it is not an out of court statement. In her deposition, Dr. Gorum states, "I invited Dr. Sessoms to the Martin Luther King Breakfast at a basketball game, because James Marshall was sitting next to me, and he was the head of the Boosters and also was very active in the fraternity and the breakfast. And so I introduced Dr. Sessoms to Mr. Marshall and then brought up the breakfast and invited him to the breakfast", See Exhibit A (J.Gorum deposition pg. 41). Jacquelyne Gorum does not quote any out of court statement that she or anyone else uttered.

1

Instead, her testimony is a description of events. She states that she sat next to Defendant Sessoms and that she invited him to the breakfast. Her testimony is offered to cast doubt on Dr. Sessoms' claims that he was never invited to the MLK breakfast, and did not even know of its existence. Jacquelyne Gorum's testimony is a direct statement of observation. Thus, it may not be excluded as hearsay.

3. Jacquelyne Gorum also stated that Dr. Sessoms offered a deanship to Professor Osei-Mensah in exchange for assisting him in his retaliatory efforts against Plaintiff. Her statement described her belief that Osei-Mensah was offered a deanship by Sessoms. Like many of the other statements challenged by the Defendants, it is not an out-of-court statement and therefore can not be excluded as hearsay.

4. Dr. Claiborne Smith, Chairman of the Board of Trustees, stated that Sessoms visited with former President DeLauder prior to taking over as University President. Like Jacquelyne Gorum's statement that she invited Defendant Sessoms to the MLK breakfast, Dr. Claiborne Smith's statement is not an out of court statement, but a statement of fact based on his personal observations. Dr Smith testified in his deposition, "There were several visits to the campus by Dr. Sessoms before DeLauder's last day in office", See Exhibit B (Deposition of Smith pg. 18). Clearly, this is not a hearsay statement and should not be excluded. Further, this statement is highly relevant to contradict Defendant Sessoms' statement that he never visited with DeLauder in the transitional period after Sessoms was chosen to replace him.

5. Sheila Davis stated that she warned Dr. Gorum that Defendant Sessoms was "out to get [him]". This statement is admissible as evidence of Sessom's bias against Plaintiff. Evidence of bias, even within a hearsay statement, is admissible under the residual hearsay exception of F.R.E. 807. This rule of evidence provides that statements not specifically covered by the hearsay exceptions but having equivalent circumstantial guaranties of trustworthiness are not excluded by the hearsay rule. This statement, made under oath, by someone with no interest

in the outcome of the litigation, has independent indicia of trustworthiness. Id. Davis' statement should also be admissible.

6.   Other statements that Defendant attacks as hearsay include that of Mrs. Arnell, Sessom's personal secretary, who alerted Dr. Gorum to DaShaun Morris' extended suspension, and Professor Aubrey, who stated that he was afraid of retaliation by Defendant and had been instructed to gather incriminating information on Gorum. Both of these statements are offered to show that many of Gorum's colleagues and fellow professors were aware of Dr. Sessom's conflict with him. These statements consist of personal observations and recollections, not out-of-court statements. As such, they are not hearsay and should not be excluded.

**WHEREFORE,** Plaintiff, Wendell Gorum, Ph.D. respectfully requests the Court to deny Defendant's Motion In Limine to exclude evidence based on hearsay.

                                        **SHELSBY & LEONI**

| OF COUNSEL | /s/ *Michael J. Logullo* |
|---|---|
| | MICHAEL J. LOGULLO, ESQUIRE |
| Gregg L. Zeff, Esquire | Mlogullo@mslde.com |
| Gzeff@frostzeff.com | 221 Main Street |
| Frost & Zeff | Stanton, DE 19804 |
| Pier 5 at Penn's Landing | (302) 995-6210 |
| 2nd Floor | *Attorney for Plaintiff* |
| Philadelphia, PA 19106 | |
| (215) 351-3333 | |
| *Attorney for Plaintiff* | |

Dated: December 7, 2007

# EXHIBIT A

J. W. Gorum, Ph.D.

41

1  university, but the one who works there, we just do
2  not discuss the university. That's --
3  Q.     Before 2004 were you and your husband social
4  friends with people from the university or were you
5  mostly friends with people from outside the
6  university?
7  A.     We were friends with people from the
8  university.
9  Q.     Okay. And you haven't been in touch with
10 many of those people since that time?
11 A.     That is correct.
12 Q.     Do you know of the Martin Luther King
13 Breakfast issue --
14 A.     Yes, I do.
15 Q.     -- that is a part of this case?
16        What do you know about it?
17 A.     Well, I know that I invited -- I personally
18 invited Dr. Sessoms to the Martin Luther King
19 Breakfast at a basketball game, because James Marshall
20 was sitting next to me, and he was the head of The
21 Boosters and also was very active in the fraternity
22 and in the breakfast. And so I introduced Dr. Sessoms
23 to Mr. Marshall and then brought up the breakfast and
24 invited him to attend the breakfast.

WILCOX & FETZER LTD.
Registered Professional Reporters

# EXHIBIT B

Gorum v. Sessoms and Board of Trustees of Delaware State University
Claiborne Smith, Ph.D.

### Page 18

1  Q. Was there some period of time when they were
2  both on campus working together?
3  A. Yes. There were several visits to the campus by
4  Dr. Sessoms before Dr. DeLauder's last day in office.
5  Q. And I want to bring up another area before I get
6  into a little more detail. Disciplining students, what
7  role, if any, does the board have with regard to
8  discipline of the students?
9  A. None that I'm aware of.
10 Q. Does the student have the same right to appeal
11 to the board that a faculty member does relating to
12 disciplinary process?
13 A. As far as I can recall or remember, I don't
14 think there ever has been an instance in which a student
15 has requested an appeal to the board. Whether or not a
16 student has ever asked to do so, I really can't say. I
17 don't recall an instance where a student has ever asked.
18 Q. So if a president expels a student from the
19 university or suspends a students from the university,
20 that's the president's prerogative without the board's
21 approval or ability to appeal that decision?
22 A. I'm not aware of a policy that gives a student
23 that right to appeal the president's decision to the
24 board.

### Page 19

1  Q. So would it be fair to say that the board does
2  not involve itself in matters of student discipline?
3  A. No. As an official policy of the board, we
4  strive not to get involved in the disciplinary actions
5  of the students.
6  Q. Are you familiar with a student by the name of
7  DeShawn Morris?
8  A. I've heard the name.
9  Q. Where have you heard the name?
10 A. I think it was in the newspaper and also in some
11 conversations. I believe he was a football player. And
12 that there was a -- I got to tell you I believe this was
13 the case because I don't remember all the details --
14 that he was accused of having a weapon on campus. And
15 that is the extent that I'm aware of all of the issues
16 that surrounded, you know.
17 Q. Did the board ever request or receive any
18 information related to DeShawn Morris for the
19 allegations against him?
20 A. No.
21 Q. Is there any procedure by which the board
22 receives information like that?
23 A. When we have a serious breach of security or a
24 threat to the safety and well-being of the campus by a

### Page 20

1  student, yes, that is brought to the attention of the
2  board.
3  Q. Who brings that to attention of the board?
4  A. It can be the president or his designee.
5  Q. How is that brought to the attention of the
6  board?
7  A. It is either by phone call or an E-mail to the
8  members of the board that such an incident has occurred
9  and we want them to be aware because we done want them
10 to read it in the newspaper first.
11 Q. It's more of a notification process than a
12 request for any action by the board?
13 A. Absolutely.
14 Q. Do you know whether such an notification
15 occurred relating to DeShawn Morris?
16 A. I don't recall the details of how that was
17 communicated.
18 Q. Did you have any discussions with Dr. DeLauder
19 about DeShawn Morris?
20 A. I don't recall a conversation I had with
21 Dr. DeLauder on that basis.
22 Q. Do you know whether or not Dr. DeLauder had any
23 discussions with the Board about DeShawn Morris?
24 A. Not that I'm aware.

### Page 21

1  Q. Or his designee had any discussions?
2  A. Not that I'm aware.
3  Q. I presume you attend all the board meetings.
4  A. I try to as chair of the board. I don't always
5  make them, but I do.
6  Q. Let me turn your attention to Dr. Gorum. When
7  was the first time that you learned that there was a
8  disciplinary process underway against Dr. Gorum?
9  A. I don't recall the exact day. But I am aware
10 that it was brought to my attention that this issue had
11 been uncovered and that the president informed me that
12 an investigation was being put in place and that it was
13 his intent to proceed with the appropriate disciplinary
14 process in regard to this allegation of grade changes.
15 Q. How was that brought to your attention?
16 A. Verbally.
17 Q. Would that have been in person, in a meeting, by
18 phone?
19 A. It could have been by phone. It could have been
20 by person. I don't recall the exact date and the
21 circumstance, but I recall the president bringing that
22 to my attention.
23 Q. Other than what you have just told me, do you
24 recall anything else about that conversation?

6 (Pages 18 to 21)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WENDELL GORUM, Ph.D., <br><br> Plaintiff, <br><br> v. <br><br> ALLEN L. SESSOMS, Ph.D., <br> And <br><br> BOARD OF TRUSTEES OF <br> DELAWARE STATE UNIVERSITY, <br><br> Defendants. | Civil Action No. 06-565-GMS |

## CERTIFICATE OF SERVICE

I, Michael J. Logullo, Esquire, hereby certify that on December 7, 2007, I caused a true and correct copy of the foregoing **Plaintiff's Response to Defendants' Motion in Limine to Exclude Evidence Based on Hearsay** to be served electronically via CM/ECF system and first class, U.S. Mail, postage prepaid, upon the following:

Robert L. Duston, Esquire
Saul Ewing, LLP
2600 Virginia Avenue, NW
The Watergate, Suite 1000
Washington, DC 20037
(202) 333-8800
rduston@saul.com

Kimberly L. Gattuso, Esquire
Michael R. Robinson, Esquire
SAUL EWING LLP
222 Delaware Avenue, Suite 1200
Wilmington, DE 19801
(302) 421-6800
kgattuso@saul.com
mrobinson@saul.com

**SHELSBY & LEONI**

 /s/ Michael J. Logullo
MICHAEL J. LOGULLO, ESQUIRE
Mlogullo@mslde.com
221 Main Street
Stanton, DE 19804
(302) 995-6210
*Attorney for Plaintiff*

1